# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FILED**

JUL 2 5 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

SOL SHEINBEIN )
Oppenheimer 1 )
Tel Aviv, Israel 69395 )
Tel: 011 972 3505684844 )

       PLAINTIFF

       V

JON DUDAS
Under Secretary of Commerce
  For Intellectual Property )
Director, U.S. Patent & Trademark Office )
          )
       DEFENDANT )

CASE NUMBER  1:05CV01460

JUDGE: Ellen Segal Huvelle

DECK TYPE: Administrative Agency Review

DATE STAMP: 07/25/2005

## <u>PETITION UNDER 35 U.S.C. 32 AND LcvR 83.7 FOR REVIEW OF THE FINAL DECISION EXCLUDING PLAINTIFF FROM PRACTICING BEFORE THE U.S. PATENT AND TRADEMARK OFFICE</u>

Plaintiff, Sol Sheinbein, hereby appeals the Final Decision (hereinafter "Final Decision")

of the Under Secretary of Commerce for Intellectual Property and Director of the U.S. Patent and

Trademark Office ("USPTO") Jon Dudas dated May 5, 2005 excluding Plaintiff from practicing

before the USPTO, which Decision was effective thirty (30) days from June 23, 2005 pursuant to

an Order attached to a Decision on Reconsideration dated June 23, 2005.

<u>JURISDICTION</u>

This Court has jurisdiction over this matter pursuant to 35 U.S.C. §32 and LCvR 83.7.

2

<u>DEFENDANT'S ARBITRARY AND CAPRICIOUS ACTS</u>

Plaintiff will show that the Defendant was arbitrary, capricious and abused his discretion, or acted not in accordance with the law, when Defendant made the following decisions:

1.    By ordering Plaintiff's exclusion from practice before the USPTO.

2.    By deciding that Plaintiff engaged in violative conduct by being disbarred from practice as an attorney by the State of Maryland and the District of Columbia.

3.    By holding that Plaintiff committed violative conduct that accrued on the dates of Plaintiff's disbarments.

4.    By deciding that a USPTO registered practitioner can be disciplined even without the showing of practitioner misconduct.

5.    By not dismissing the Complaint to discipline Plaintiff on the grounds that it was barred by the Statute of Limitations.

6.    By holding that an agency's interpretation of its own regulations should be entitled to deference even when it was shown that the USPTO interpretation was erroneous and inconsistent with the regulation.

7.    By holding that the USPTO Disciplinary regulations do not discriminate against practitioners subject to suspension or disbarment by a State authority.


<u>BACKGROUND</u>

The facts in this Appeal are not in dispute:

1.    On September 21, 1997 Plaintiff sent his son to Israel, while the authorities wanted

3

to question his son in connection with a murder[1]. This *was Plaintiff's* conduct.

2.   On December 16, 2002, Plaintiff was disbarred from law practice in Maryland by the Court of Appeals of Maryland for the above conduct.

3.   The District of Columbia initiated Disciplinary proceedings against Plaintiff in February 2000, but stayed further action in the matter pending a decision by the State of Maryland. After the Maryland decision disbarring Plaintiff, the Court of Appeals for the District of Columbia suspended Plaintiff from practicing law in the District of Columbia Bar on February 6, 2003. On March 11, 2004, Plaintiff was disbarred from the Court of Appeals for the District of Columbia.

4.   On March 4, 2004, the USPTO Director of Office of Enrollment and Discipline ("OED") filed a Complaint Under 35 U.S.C. §32 (hereinafter "Complaint"), and an Amended Complaint (hereinafter "Amended Complaint") on March 31, 2004, asking for Plaintiff's exclusion from practice before the USPTO. The proceeding was assigned Disciplinary Proceeding D03-14.

5.   The Complaint and Amended Complaint asked for Plaintiff's exclusion from practice before the USPTO solely on the basis of violating 37 CFR §10.23(c)(5) in that Plaintiff was disbarred from practice as an attorney by duly constituted authorities of Maryland and the District of Columbia on ethical grounds.

6.   By decisions dated September 7, 2004 ("Order on Cross-Motions for Summary Judgment") and December 10, 2004 ("Initial Decision of Administrative Law

---

[1] The reason Plaintiff sent him to Israel was to prevent his committing suicide and give him an opportunity to cool off. The dissenting opinions filed by two Maryland Court of Appeals judges in the Order disbarring Plaintiff provide cogent reasons why Plaintiff's conduct was not so egregious so as to require discipline.

Judge") Administrative Law Judge Moran dismissed arguments asserted by Plaintiff and recommended that Plaintiff be excluded from practicing before the USPTO.

7.    The Under Secretary of Commerce for Intellectual Property and Director of the USPTO affirmed the exclusion of Plaintiff in a Final Decision Under 37 CFR §10.156 in an opinion dated May 5, 2005. A Request for Reconsideration of the Final Decision was denied on June 23, 2005 and exclusion was effective July 23, 2005. Plaintiff was afforded until July 23, 2005 to ask for judicial review in the U.S. District Court for the District of Columbia. This Complaint/Petition/Appeal is timely filed on Monday, July 25, 2005. Pursuant to Federal Rules of Civil Procedure, Rule 6(a), submission of this Petition on the first business day after Saturday, July 23, 2005 is authorized.

## STATUTORY AUTHORITY TO DISCIPLINE PRACTIONERS

The USPTO has approximately 30,000 practitioners authorized to represent Applicants before the USPTO. Close to one-quarter of the practitioners are not members of the bar, and are classified as Patent Agents, as was Plaintiff before he was admitted to the bar.

The relevant part of the statutory authority granted the Director to initiate and conduct Disciplinary proceedings is found in 35 U.S.C. §32, *Suspension or Exclusion From Practice*:

> The **Director may**, after notice and opportunity for a hearing, suspend or **exclude**, either generally or in any particular case, **from further practice before the Patent and Trademark Office**, any person, agent, or attorney **shown to be incompetent or disreputable, or guilty of gross misconduct** or who does not comply with the regulations established under Section 2(b)(2)(D) of this title….(Emphasis added)

The relevant part of 35 U.S.C. § 2(b)(2)(D) reads, as follows:

5

35 U.S.C. § 2 *Powers and duties*
(b) Specific Powers. -
The Office -
(2) may establish regulations, not inconsistent with law, which -
(D) may **govern** the recognition and **conduct** of agents, attorneys, or other persons representing applicants or other parties before the Office... (Emphasis added)

Pursuant to its authority, the USPTO issued regulations to implement the above statutory authorities to govern and discipline practitioners. The relevant regulation that is before this Court in this matter is 37 CFR §10.23(c)(5). The pertinent portions of this regulation follows:

§ 10.23 **Misconduct.**

(a) **A practitioner** shall not *engage* in *disreputable or gross **misconduct***.

(b) A **practitioner** shall not:

(1) *Violate* a Disciplinary Rule.

(2) *Circumvent* a Disciplinary Rule through actions of another.

(3) *Engage* in illegal *conduct* involving moral turpitude.

(4) *Engage in conduct* involving dishonesty, fraud, deceit, or misrepresentation.

(5) *Engage in conduct* that is prejudicial to the administration of justice.

(6) *Engage in any other conduct* that adversely reflects on the practitioner's fitness to practice before the Office.

(c) *Conduct* **which constitutes a violation of paragraphs (a) and (b)** of this section *includes*, but is not limited to:

(5) Suspension or disbarment from practice as an attorney or agent on ethical grounds by any duly constituted authority of a State or the United States...(Emphasis added)

THE FINAL DECISION OF DEFENDANT

In his decision dated May 5, 2005, Defendant held that Plaintiff violated 37 CFR § 10.23

6

by being disbarred from practice as an attorney by the State of Maryland and the District of

Columbia on ethical grounds, in violation of USPTO Disciplinary Rule (DR) 10.23(c)(5), and

that such disbarment was "deemed violative conduct".

STIPULATIONS BY PLAINTIFF

The issue raised in this petition is simple and not subject to factual dispute.  In order to

reduce the issues on Appeal to one, Plaintiff stipulates that:

1.    Plaintiff's disbarments constitute disbarments on ethical grounds.

2.    Plaintiff's conduct on September 21, 1997 would have provided proper grounds

for the USPTO to discipline Plaintiff if initiated within the five-year statutory

period.

STIPULATIONS BY DEFENDANT

The USPTO has agreed that Plaintiff's conduct of September 21, 1997, was not a valid

basis for Disciplinary proceedings since the five-year statutory period prescribed by 28 U.S.C.

§2462 had expired before any USPTO Complaint was made. See Page 10, line 15 through Page

11, line 9 of Complainant's Brief in Support of Director's Motion for Summary Judgment filed July

16, 2004, where the USPTO wrote:

**28 U.S.C. §2462 provides in relevant part, "an action, suit or proceeding for the
enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be
entertained unless commenced within five years from the date when the claim first
accrued..."** The U.S. Court of Appeals for the District of Columbia Circuit has determined that
the five-year limitation in §2462 applies to all administrative proceedings initiated by the federal
government for the purpose of enforcing *or imposing* a penalty. 3M Company v. Browner, 17
F.3d 1453 (D.C. Cir. 1994).  The Court has included within the definition of "penalty" under
2462 the revocation or suspension of a professional license by a federal agency. Johnson v.
Securities and Exchange Comm'n, 87 F.3d, 484, 488-89 (D.C.Cir. 1996). Moreover, although
2462 does not discuss the USPTO **the Director agrees that the five-year default statute of
limitations applies to the agency in this type of proceedings and thus, the Director does not**

file complaints against respondents based on claims that are over five years old.  **Chief Judge Biro of this Tribunal recently found that the disbarment or suspension of a USPTO practitioner under 37 CFR §10 is a "penalty" for the purposes of 2462 and that any disciplinary proceeding seeking such disbarment or suspension is subject to 2462's five-year period of limitations** Moatz v. Kroll, Proceeding No. D03-09 (Order (p. 4) October 15, 2003); see also Moatz v. Kersey, Proceeding No. 00-07, 2002 WL 32056608 (Comm'r 2002).  (Emphasis added).


THE ISSUE BEFORE THE COURT

Plaintiff is of the opinion that this Honorable Court needs to decide only one issue:

Is Plaintiff's disbarment from practice by Maryland and the District of Columbia properly deemed to be conduct of Plaintiff?

If it is, Plaintiff may be disciplined since the claim first accrued upon Plaintiff being disbarred on December 16, 2002.

If it is not, Defendant's exclusion of Plaintiff was improper because it was barred by the Statute of Limitations.

Plaintiff urges that Plaintiff's disbarment is not Plaintiff's conduct and will show that Defendant's interpretation of this regulation is clearly erroneous or inconsistent with the regulation and law.


ARGUMENTS

Under 37 CFR §10.134, Complaint, Section (a),

"[a] complaint instituting a disciplinary proceeding shall....(2) [g]ive a plain and concise description of the alleged violations of the Disciplinary Rules by the practitioner." (Emphasis added).

This rule thus provides the "notice" required by 35 U.S.C. §32.   Disciplinary Rules are defined in 37 CFR §10.20, Section (b), as follows:

"Disciplinary Rules [which include Section 10.23] are mandatory in character and
state the minimum level of ***conduct below which no practitioner can fall*** without
being subjected to disciplinary action." (Emphasis added).

The Complaint and Amended Complaint filed against Plaintiff charged Plaintiff, as
required, with a violation of a Disciplinary Rule.  Specifically, it accused Plaintiff of being in
violation of 37 CFR §10.23, entitled *Misconduct*.  More specifically, it accused Plaintiff of being in
violation of 37 CFR §10.23(c)(5).

Reviewing the statutory authority granted to the Defendant in 35 U.S.C. §32, and 35 U.S.C.
§2(b)(2)(D), it is noted that other than by showing the practitioner to be disreputable or
incompetent, practitioner misconduct must be shown in order to exclude or suspend the
practitioner. (While Plaintiff is not being accused of being incompetent, Plaintiff notes that
incompetency is addressed at 37 CFR §10.77 and is framed in "conduct" language, as well as being
a Disciplinary Rule, requiring practitioner misconduct).

Defendant's Complaint Charged Plaintiff With Misconduct, Not For Being Disreputable

The USPTO did not draft any regulations that address the disrepute of a practitioner (as
opposed to disreputable conduct).  A search of the 37 CFR §10 regulations located only two
instances where "disreputable" is mentioned.  In the first instance, it may be found in 37 CFR
§10.130, where the 35 U.S.C. §32 statute is essentially repeated, other than that the term "violates a
Disciplinary Rule" replaces the language "does not comply with regulations established under
section 2(b)(2)(D)".

The other instance is in the aforementioned 37 CFR §10.23(a) Misconduct section that
Plaintiff is allegedly deemed to have violated.  Before Chapter 10 of 37 CFR was adopted in 1985,
it was published in the Federal Register for comments.  A commentator to this proposed Section

9

requested a definition of the term "disreputable" and "gross misconduct", for which see Federal

Register, Volume 50, No. 25 (February 6, 1985), page 5163, Column 1 (50 FR 5163). The response

given there by the USPTO was as follows:

> The terms "disreputable" and "gross misconduct" appear in 35 U.S.C. 32 and need no
> further definition in the rules. For a discussion of "disreputable" see *Poole v United States*,
> 54 A.F.T.R. 2d (P-H) 84-5536 [sic] [5530][D.D.C., June 29, 1984] (See 739 F. 2d 949).

> In the *Poole* case, the Court held that it

> "...is simply not the case that ......disreputable refers solely to a general loss of
> reputation.....With respect to attorneys or other agents, 'disreputable' conduct has generally
> included 'unprofessional' conduct and .....was well understood to include 'any conduct
> violative of the ordinary standard of professional obligations and honor.' Garfield v. United
> States ex rel. Stevens, 32 App. D.C. 109, 140 (1908)"

> In the Final Decision, Defendant went to great lengths to justify 37 CFR §10.23(c)(5) as

authorized under the "disreputable" provision of 35 U.S.C. 32. See Pages 11-14 of the Final

Decision. At Page 12 of the Decision, Defendant states that the "loss of repute" Plaintiff first

incurred was when Plaintiff was disbarred, and not when he committed the allegedly disreputable

acts. This interpretation is in direct contradiction to the *Poole* case above that the USPTO itself

cited for the definition of "disreputable".

Contrary to Defendant's interpretation of the term, even if being disbarred renders the

disbarred practitioner "disreputable", it is clear from the above *Poole* definition of disreputable, the

practitioner became disreputable when he committed the disreputable conduct. If so, it was

Plaintiff's disreputable conduct that led to Plaintiff's disbarment that rendered Plaintiff

disreputable. As admitted by the USPTO, this conduct, committed in 1997, is barred by the Statute

of Limitations statute 28 U.S.C. §2462 from being pursued in a disciplinary proceeding by the

USPTO.

Moreover, Defendant's interpretation of "disreputable" results in an internal contradiction in holding that Plaintiff violated 37 CFR §10.23 upon being disbarred on ethical grounds by the State of Maryland **and** the District of Columbia. If Plaintiff has already been deemed disreputable by being disbarred in Maryland on ethical grounds on December 16, 2002, how can Plaintiff become disreputable again on March 11, 2004, by being disbarred by the District of Columbia on March 11, 2004 on the same ethical grounds? (Plaintiff's suspension by the District of Columbia on February 6, 2003, overlooked by the Defendant, would, under that interpretation, be another instance of Plaintiff becoming "disreputable" and render Defendant's interpretation even more "problematic", e.g., does the ending of the period of suspension of a suspended practitioner then make him once again reputable?). Clearly, the Defendant's interpretation of "disreputable" is wanting, and the proper interpretation is that given it in the *Poole* case.

Such a correct interpretation results in defining the moment that Plaintiff committed the disreputable conduct as the time the claim accrued. As such, even Plaintiff's alleged disrepute is barred by 28 U.S.C. §2462 as a basis for exclusion.

While the above attempt by Defendant to base the action against Plaintiff on being "disreputable" results in the same outcome, i.e., the action is barred by the Statute of Limitations, Plaintiff reminds the Court that the Complaint brought against Plaintiff requires, pursuant to 37 CFR §10.140 and 37 CFR §10.20 a showing of practitioner misconduct before any disciplinary action can be taken against Plaintiff. In fact, Plaintiff was charged with violation of 37 CFR §10.23, which cannot be more explicit in requiring a showing of practitioner misconduct.

Plaintiff has little doubt that the USPTO could draft a valid regulation under its authority granted in 35 U.S.C. §32 which would allow exclusion from practice of a practitioner solely on

11

the grounds that the USPTO finds the practitioner to be disreputable. However, no such regulation exists, and even if it did exist, it is not the regulation under which the Plaintiff was charged. Plaintiff was not accused of being disreputable in the Complaint that initiated the instant disciplinary proceedings, and as 37 CFR §10.134 clearly states, the reasons for such suspension or exclusion must be plainly given in the Complaint. The regulation under which Plaintiff was charged requires, among other possibilities, disreputable misconduct.

Defendant has made a valiant attempt to isolate the specific language of sub-sub-section (5) ("Suspension or disbarment from practice as an attorney or agent on ethical grounds by any duly constituted authority of a State or the United States") from sub-section (c) ("**Conduct** which constitutes a violation of paragraphs (a) and (b) of this section includes") which references sub-sections (a) ("A **practitioner** shall not engage in disreputable or gross **misconduct**") and subsection (b) (A **practitioner** shall not...") of section 10.23, **Misconduct**, in order to divert the Court's attention from the fact that it must find actual practitioner misconduct within the period allowed by the Statute of Limitations in order to sustain Defendant.

Due Process

Due process requires that Plaintiff be informed of the charges against him so that he can answer them. The USPTO did inform Plaintiff of the charges. The USPTO charged Plaintiff with a violation of a subsection of Section 10.23, *Misconduct [of a practitioner]*. The charges which were the subject of the Complaint against Plaintiff bear no relationship to questions of disreputability, but only to the conduct of Plaintiff. Plaintiff had no reason to answer any charges other than for Plaintiff's misconduct.

The preamble of Section 10.23(c) reads "*Conduct* which constitutes a violation of

paragraphs (a) and (b) of this section includes but is not limited to" followed by 20 examples, including 10.23(c)(5) which formed the basis for the charge against Plaintiff.

Since misconduct is required before anything in 37 CFR §10.23 can be brought into play, it is not unreasonable that Plaintiff contends that Section §10.23, which forms the basis of the only charge against Plaintiff as embodied in §10.23(c)(5), permits disciplining practitioners only for their misconduct. The specific charge brought against Plaintiff has this limitation. In fact, as discussed above, all disciplinary proceedings that are initiated by a Complaint must include this limitation, pursuant to 37 CFR §10.134(a) and 37 CFR §10.20(b).

To decide now to exclude Plaintiff on the grounds that Plaintiff was disreputable by originating those grounds *sua sponte*, and by then deciding them without giving Plaintiff an opportunity to defend against them is clearly a violation of due process. However, it is not the office of the Defendant's deciding official for the Final Decision to make charges, but only to decide those charges which have actually been brought before him.

In an attempt to provide "lip service" to his quandary, Defendant, after dedicating almost the complete Decision to discussing Plaintiff's conduct of September 21, 1997, and Plaintiff being disreputable, does state that the act of disbarment of Plaintiff is "deemed violative conduct", slipping it in at Page 12, lines 1-3 of the Final Decision.

Misconduct

Black's Law Dictionary, Fourth Edition (1957) defines "*conduct*" as follows: "Personal behavior; deportment; mode of action; any positive or negative act. Kelly v. State, 151 Md. 87, 133 A. 899, 904; Lamborn v. New York Cotton Exch., 197 N.Y.S. 57, 60, 203 App.Div. 565."

"*Misconduct*" is defined therein as "a transgression of some established and definite rule of

action, a forbidden act, a dereliction from duty, unlawful behavior, willful in character, improper or wrong behavior; its synonyms are misdemeanor, misdeed, misbehavior, delinquency, impropriety, mismanagement, offense, but not negligence or carelessness. Mandella v. Mariano, 61 R.I. 163, 200 A. 478, 479."

"Act" is defined as "something done *voluntarily* by a person; the exercise of an individual's power"; denotes affirmative; expression of will; idea of performance

Other definitions of the word "conduct" are similar: "Personal behavior", "to comport oneself" "personal deportment" "behavior", "mode of action", "conduct oneself", "behave in a certain way".

No definition of the words "conduct", "misconduct", "act" or "behavior" can make a decision of a State authority to disbar or suspend Plaintiff into *practitioner conduct* since there is no conduct, behavior or act of *practitioner* in the making of that decision.

On the contrary, Plaintiff vigorously opposed the act eventually taken by the state authorities to revoke Plaintiff's law license. To now attribute the actions taken by the State authorities to disbar Plaintiff and thus make the State action the "voluntary" conduct of Plaintiff, renders a mockery of the English language and creates a Kafkaesque atmosphere.

The Proper Reading of 37 CFR §10.23

Plaintiff contends that Plaintiff's suspension and disbarments from practice as an attorney by Maryland and the District of Columbia are *not* instances of *Plaintiff's misconduct*, but rather are acts of ministerial bodies having authority to discipline an attorney.

Clearly, some words are missing in Section 10.23(c)(5) to make this Section logically follow the preface (c), "[c]onduct [of a practitioner]". Such missing words, grammatically called

an "ellipsis", are obviously the words "Conduct which results in" to be inserted at the beginning of Section 10.23 (c)(5).

Plaintiff would like to offer a simple argument – the USPTO Disciplinary Rules require that the practitioner to be excluded from practice must be guilty of misconduct, which means that the practitioner must have committed whatever conduct he is to be found guilty of. 37 CFR §10.23 is entitled *Misconduct*. 37 CFR §10.23 (c) specifies examples of *conduct of a practitioner* which constitute a violation of the previous paragraphs (a) and (b).    37 CFR §10.23 (c) (5) lists "Suspension or disbarment from practice as an attorney or agent on ethical grounds by any duly constituted authority of a State or the United States".    Suspension or disbarment by a "duly constituted authority" is *not conduct of a practioner*, but is an act of the duly constituted authority.    Only the *conduct of the practitioner* resulting in the disbarment can reasonably be considered conduct of the practitioner. While such *suspension or disbarment* by authorized bodies may be a result of acts of misconduct of an practitioner, and may be evidence or conclusions of misconduct, they are *not, per se*, "*conduct of a practitioner*".

On December 12, 2003, the USPTO published proposed revisions of the regulations relating to Disciplinary Proceedings in the Federal Register, 68 F.R. 69442. At Page 69534, in a proposed Section §11.24 (c), relating to disciplining USPTO practitioners based on their having been suspended or disbarred in another jurisdiction, the proposed Rule recites, *inter alia*,

> [A] final adjudication in a disciplinary court shall establish conclusively **the misconduct** clearly disclosed on the face of the record upon which the discipline is predicated.    A certified copy of the record of suspension, disbarment, or resignation shall be <u>conclusive evidence</u> of the commission of <u>professional misconduct</u> in any reciprocal disciplinary proceeding. (Emphasis added).

Thus, by USPTO definition, the misconduct being disciplined is the <u>conduct of the</u>

practitioner, himself or herself, and **not the "misconduct" of the practitioner for having been** disbarred.

Therefore, the proper reading of Section 10.23(c)(5) to maintain a consistency in these regulations must be that this section includes in an ellipsis the phrase "[C]onduct which results in" before the term "Suspension or disbarment…." in this clause. Reading these clauses in a vacuum without the ellipsis language "[C]onduct which results in" in the beginning thereof would create a contradiction, which would have to be inconsistent with the intent of the USPTO regulations.

Any misconduct of Plaintiff occurred more than five years before the Complaint which initiated this action was filed, and such misconduct is thus not subject to USPTO Disciplinary action, since such action is barred by the Statute of Limitations. Since it is agreed by all parties that *the practitioner conduct* which led to Plaintiff's disbarment occurred outside the statute of limitations, action by the "duly constituted authority" cannot be converted into Plaintiff's conduct to bring the conduct within the statutory period.

For the above reasons, a disbarment or suspension by a State Bar does not create a separate ground for disciplining an attorney, but it is the conduct that leads to such disbarment or suspension that provides grounds for discipline. The USPTO's own proposed regulation at 68 FR 69442, cited above, appears to support this interpretation. Thus, no new starting date is created for determining the Statute of Limitations cut-off date.

For a while in these proceedings, the USPTO maintained that it was entitled to render reciprocal discipline (automatically excluding from USPTO practice anyone who had been disbarred by a state bar), but it appears that this position has been properly dropped, and Plaintiff

thus does not find it necessary to argue against it.

An Agency's Interpretation Of Its Regulations Cannot Be Accepted If Erroneous Or Inconsistent

The Final Decision held that an agency's interpretation of its own regulations is entitled to substantial deference, and that interpretation will be accepted unless it is plainly erroneous or inconsistent with the regulation.

After paying lip service to this recognized and accepted doctrine, the Defendant fails to address any of the points made by Plaintiff proving that the USPTO interpretation is erroneous and inconsistent with the regulations.

Under the Defendant's conclusion, regulations drafted in 1985, ten years before a court in *Johnson v. SEC* first declared that the five-year Statute of Limitations applies to these types of cases, become unchallengeable even if the regulations are contrary to law as later declared. When the regulations were drafted, any interpretation of 37 CFR §10.23(c)(5) would result in the identical outcome, whether or not the ellipsis were read into it, since the five-year Statute of Limitations was not then known to be applicable to USPTO disciplinary proceedings. Since the 1996 *Johnson* case, the Statute of Limitations has been known to be applicable to these proceedings, and interpreting the regulation correctly as Plaintiff has done results in a completely different outcome from the improper interpretation given it by the Defendant.

Judicial review of an agency's interpretation of the statute is accomplished according to the two-step approach set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). A court must first ask if the statute is clear and unambiguous. If it is, the language of the statute controls. *Id.* "[I]f the statute is silent or ambiguous with respect to the specific issue," however, then "the question for the court is whether the agency's answer is

based on a permissible construction of the statute." *Id.* at 843. *Chevron*'s second question is "whether the agency's [interpretation] is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. The agency's interpretation is entitled to ordinary deference and will be given "controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844.

The authority given the USPTO to establish regulations that govern the conduct of practitioners under 35 U.S.C. §2(b)(2)(D), requires that they be "**not inconsistent with law**". Interpreting a regulation in a manner such that it circumvents the Statute of Limitations, as the Defendant has done, makes the regulation inconsistent with 28 U.S.C. §2462.

It should also be noted that an agency which has issued two contradictory interpretations of the same regulation is not entitled to much deference when it chooses which interpretation to maintain and which interpretation to ignore. In 50 FR 5163, cited above, the USPTO maintained that "disreputable" did not stand alone, but included the violative conduct which brought disrepute. The current interpretation seems to be that loss of repute occurs as a result of being disbarred, and that actual practitioner conduct by Plaintiff is apparently unnecessary.

Under the Defendant's logic, there would be nothing but common sense to prevent the USPTO from adding another hypothetical Disciplinary Rule to those itemized in 37 CFR §10.23(c) that would make the filing of a Complaint against a practitioner by the Director into misconduct of the practitioner. Under this simple and effective procedure, the USPTO could thus file a first Complaint (valid or not) against a practitioner for misconduct outside the five-year Statute of Limitations, and immediately withdraw the first Complaint after a Statute of Limitations defense were raised, followed by substitution in its place a second Complaint bootstrapped on the first

Complaint and alleging a violation of this new, improved Disciplinary Rule.

The Defendant would undoubtedly hold in that hypothetical case, as he has held in the instant case, that the claim accrued when the first USPTO Complaint was filed, that the practitioner is barred from challenging the regulation or the interpretation given it by the USPTO in interpreting its own rules, and that the practitioner had committed a violation of this Rule and would be subject to discipline for the conduct that was the subject of the first Complaint, despite the conduct itself being outside the five-year Statute of Limitations.

In summary, any disciplinary action against Plaintiff should only be allowed to be brought against Plaintiff within five-years of Plaintiff's conduct. *The conduct of the state in disbarring Plaintiff is not practitioner conduct.*

As far as Plaintiff is aware, there has never been a previous case decided in which the question of whether or not the ellipsis language applies would not have been moot. This is because the question of whether exclusion could be based on misconduct (which led to disbarment), which misconduct occurred more than five years before the Complaint was made, has never been argued in a reported decision.

During the course of Plaintiff's disciplinary proceedings in the USPTO, the USPTO urged that USPTO registered attorneys have been suspended or excluded based on the above 37 CFR §10.23(c)(5) regulation, citing several internal USPTO Decisions, all of which were either default cases or settlements.

Plaintiff does not see the relevance of these Decisions since none of these Decisions addressed the argument first made by Plaintiff, that discipline based on disbarment within the five-year period is barred by the Statute of Limitations period if the practitioner conduct occurred

outside the five-year period. There is thus no known previous agency interpretation of its regulations relating to state disbarment and resulting exclusion from USPTO practice when the underlying conduct occurred outside the period established by the Statute of Limitations.

While it may be true that long-standing regulations are to be given much credence, it is also true that where one reading of a regulation falls within the allowable scope of a statute and another reading does not, the regulation has to be given the reading that makes the regulation statutory in order for it to have that credence. Where the regulation states that being disbarred is misconduct, the only interpretation which should be allowable would require misconduct by the practitioner. To do otherwise is to change the meaning of the regulation (which requires misconduct) long after the regulation was promulgated and approved. Since an accusation of misconduct is required to tell the practitioner what the charges against him or her are, an interpretation that states that misconduct within the statute of limitations period is not required in order to constitute misconduct is clearly erroneous and fails to give adequate notice to the practitioner of the charges against him.

Interpreting 37 CFR §10.23(c)(5) in a manner the Defendant has done also results in unfair discrimination against practitioners otherwise subject to disbarment proceedings as compared to those not subject to disbarment proceedings, since such an improper interpretation of the regulation results in the disbarment date becoming the date the claim first accrued, which may result, as it has in the instant case, in the USPTO being able to bring a Complaint against Plaintiff, while such a Complaint could not have been made had Plaintiff not been subject to State disbarment proceedings, since an action based on conduct based on the September 21, 1997 conduct would have been barred by the Statute of Limitations.

The record is clear that the USPTO was aware of Plaintiff's conduct long before Plaintiff was disbarred. Newspaper clippings relating to Plaintiff's conduct dated long prior to September 2002, which were identified in the Administrative File maintained by the USPTO Office of Enrollment and Discipline (OED) attest to that. The OED Director's Reply To Respondent's Appeal to the Commissioner under 37 CFR §10.155 dated February 7, 2005, seems to gloat on this fact at Page 23, "..the OED Director most assuredly would have sought disciplinary action....against [Plaintiff] upon learning of his misconduct, which was virtually impossible to miss because it was highly publicized in the news media in real time."

Yet, the USPTO took no action against Plaintiff until the five-year Statute of Limitations expired with respect to Plaintiff's conduct.

There is no provision in the patent statute under 35 U.S.C. § 32 that would toll the five-year statute of limitation of 28 U.S.C. § 2462 pending the outcome of any State disbarment proceeding. The disciplinary action by the Maryland Bar does not toll the statute of limitations set forth in 28 U.S.C. § 2462. While the action by the Maryland Bar was initiated in September 1999, and that initiated by the D.C. Bar was in 2000, waiting for a final decision in the Maryland proceedings does not toll the statutory period. A decision regarding any disciplinary action against Plaintiff by the Maryland Bar was not a condition precedent that had to be fulfilled before the USPTO could bring its Complaint, nor was a final administrative order assessing penalty a requirement that had to be fulfilled.

Defendant asserts in the Final Decision "that requiring the USPTO to proceed [in bringing a Complaint] before state bar proceedings are complete would work to the detriment of accused practitioners who would have to defend dual actions simultaneously." Final Decision,

Page 13.

This attempt by Defendant to ask the Court to ignore the clear provisions of the Statute of Limitations, 28 U.S.C. §2462, because Defendant was doing Plaintiff a favor, should be dismissed out of hand. Defendant never approached Plaintiff to ask if Plaintiff was interested in a delay in the initiation of a Complaint. Moreover, there was nothing to prevent Defendant from bringing the Complaint before the Statute of Limitations expired, and staying the proceedings pending the resolution of the Maryland disbarment proceedings. This is exactly what the District of Columbia bar did, and they were not constrained by a Statute of Limitations deadline, as was the USPTO.

Plaintiff and Defendant are in agreement that in the eighty-five (85) day period between September 22, 2002, when the statute of limitations on Plaintiff's September 21, 1997, conduct had expired, and December 15, 2002, just before Maryland disbarred Plaintiff, Plaintiff was not subject to any disciplinary action by the USPTO.

Defendant now postulates that Defendant acquired a new ground to exclude Plaintiff based on Plaintiff's being disbarred on December 16, 2002. Defendant also postulates that the new ground is based on Plaintiff's conduct of September 21, 1997, but does not rely on that conduct, since that conduct cannot be disciplined directly because such discipline is barred by the Statute of Limitations. This argument ranks right up there with transubstantiation in its miraculous qualities.

Under the determination reached by the Defendant, Plaintiff has committed misconduct no less than five times:

1. On September 21, 1997, when Plaintiff committed questionable conduct;

2. On December 16, 2002, when Plaintiff was disbarred in Maryland;

3. On February 6, 2003, when Plaintiff was suspended by the District of Columbia bar;

4. On March 11, 2004, when Plaintiff was disbarred by the District of Columbia bar; and

5. On June 23, 2005, when Plaintiff was excluded from practicing before the USPTO.

Had Plaintiff been registered before other bar associations and courts and had Plaintiff been disbarred therefrom, Plaintiff would have accumulated even more USPTO defined misconduct violations, all generating their own date of when the claim for that misconduct first accrued. Discipline for these violations would be based on Plaintiff's conduct of September 21, 1997, despite the fact that disciplining Plaintiff for that conduct is barred by the Statute of Limitations. Assuming, as stipulated for this case, that Plaintiff committed misconduct on September 21, 1997, there is no suggestion that Plaintiff has committed any further misconduct since that date.

Interpreting 37 CFR §10.23(c)(5) improperly, and contrary to law, results in the above absurd and Kafkaesque result.

It is clear that the USPTO does not like being inhibited by a statute of limitations, but Congress enacted the statute precisely to inhibit agencies, including the USPTO, from delaying action until the agencies found it convenient to act. The agencies do not have the option of indefinite delay, especially when they know the relevant facts early.

CONCLUSION

For the foregoing reasons, the Final Decision of the USPTO should be reversed and the

USPTO ordered to reinstate Plaintiff to the rolls of eligible patent agent practitioners.


Respectfully submitted,


Dated: July 25, 2005                    By:    _____

                                               Sol Sheinbein, *pro se*
                                               Oppenheimer 1
                                               Tel Aviv, Israel 69395
                                               Tel: 011 972  3505684844

24