UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOL SHEINBEIN,                ) <br>                                     ) <br>             Petitioner,     ) <br>             v.                   ) <br> JON W. DUDAS,            ) <br> DIRECTOR, UNITED STATES PATENT   ) <br> AND TRADEMARK OFFICE,       ) <br>                                      ) <br>             Respondent.   ) <br> _____) | Civil Action No. 05-cv01460 (ESH) |

## RESPONDENT'S MOTION FOR JUDGMENT OF AFFIRMANCE[1]

Respondent Jon W. Dudas, Undersecretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office (USPTO), moves for summary affirmance in this case. Petitioner challenges a May 5, 2005 decision of the USPTO Director to exclude Petitioner from practice before the USPTO, Administrative Record ("A.R.")[2] 1849-67, which decision was affirmed on reconsideration on June 30, 2005. A.R. 1875-77. The USPTO's decision was in all respects reasonable, lawful, and supported by substantial record evidence. The USPTO's General Counsel, delegated authority to decide such matters on behalf of the USPTO Director, carefully reviewed the proceedings before the assigned Administrative Law

---

[1] This Motion for Summary Affirmance is properly presented under Federal Rule of Civil Procedure ("FRCP") 7, rather than as a motion for summary judgment under FRCP 56, because the issue before the court is the substantiality of evidence in an administrative record. See Igonia v. Califano, 568 F.2d 1383, 1389 (D.C. Cir.1977) (summary judgment deemed improper in reviewing decision under Social Security Act since in almost all such cases "the issue before the court is the substantiality of the evidence"). See LcvR 83.7 ("the record and proceedings before the Patent Office . . . shall constitute the sole basis for the court's review).

[2] A copy of the certified Administrative Record has been filed with the Court herewith.

1

Judge (ALJ), the parties' submissions in the proceeding before the Director, and the complete

record in this matter, and issued a detailed opinion setting forth the reasons for, and record

evidence supporting, the decision excluding Petitioner from practice before the USPTO.  That

decision in no way violated the applicable legal standards, and the Court should grant

Respondent's Motion for Summary Affirmance.

### Factual and Procedural Background[3]

Petitioner was admitted to the District of Columbia Bar on April 26, 1971, and was

admitted to the Maryland Bar on June 24, 1971.  A.R. 1850.  On April 27, 1970, Petitioner

registered with the USPTO as an agent.  Id.  Thereafter, on May 24, 1971, Petitioner's

registration status with the USPTO was changed from an agent to an attorney, and Petitioner was

issued attorney certificate number 25,457 on that date.  Id.

In August 2001, the Attorney Grievance Commission of Maryland filed a petition with

the Court of Appeals of Maryland seeking disciplinary action against Petitioner for allegedly

violating Rule 8.4 of the Maryland Rules of Professional Conduct (MRCP) by sending his son,

Samuel Sheinbein, to Israel, after Petitioner had been told by his son that he had killed Alfred

Enrique Tello, Jr., and after Petitioner knew that his son was being investigated by homicide

detectives in connection with Mr. Tello's murder.  Id.  The Court of Appeals of Maryland

(Maryland Court) referred the matter to Judge S. Michael Pincus of the Circuit Court for

Montgomery County to conduct an evidentiary hearing and to make findings of fact and

conclusions of law.  Id.  An evidentiary hearing was conducted on March 20, 2002.  Id.

---

[3] The factual background tracks the USPTO's May 5, 2005 final decision.  A.R. 1849-65.

After the hearing, Judge Pincus made factual findings, including the following.[4]  In September 1997, the police department in Montgomery County, Maryland investigated the murder of Mr. Tello in Petitioner's Montgomery County, Maryland neighborhood and the participation of Petitioner's son, Samuel, in the murder.  A.R. 1851.  Police requested and obtained a search warrant for Petitioner's premises in connection with Mr. Tello's murder.  Id. On September 19, 1997, police presented Petitioner with a search warrant authorizing the search of Petitioner's residence for evidence relating to the crime of first degree murder.  Id.  Petitioner read the contents of the warrant at the time of its execution, and observed the five-hour-long search.  Id.

At the time of the search warrant's execution, and after items were seized pursuant to the warrant, a homicide detective told Petitioner the matter under investigation was serious, and requested that Petitioner contact her if he heard from his son Samuel.  Id.  On more than one occasion on September 19, 1997, Petitioner assured the detective he would contact her whenever he heard from his son, and otherwise alert her of his son's whereabouts.  Id.

Petitioner spoke to the detective the following day, on September 20, 1997, but failed to tell her that his other son Robert had had a telephone conversation with Samuel, and that Samuel was to call back later that day.  Id.  Petitioner also spoke to Samuel on September 20, 1997, and told him that he should go to Israel.  Id.  Before suggesting that his son leave the United States for Israel, Petitioner was aware that his son had admitted to killing Mr. Tello.  Id.  Petitioner then obtained Samuel's passport and brought it to Samuel in New York.  A.R. 1852.  Petitioner also

---

[4]   The Judge's findings of fact are set forth more fully in the opinion of the Maryland Court of Appeals in  Attorney Grievance Commission of Maryland v. Sheinbein, 812 A.2d 981, 997 (Md. App. 2002).

purchased airplane tickets for Samuel to depart New York for Israel just before midnight on September 21, 1997.  Id.

Based on these facts, Judge Pincus found that Petitioner had committed common law obstruction, and had also engaged in conduct prejudicial to the administration of justice, and had thereby violated MRPC 8.4(b) and (d).  A.R. 1852.  MRPC Rule 8.4 provides, in relevant part, that it is professional misconduct for a lawyer to:  "(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; . . . (d) engage in conduct that is prejudicial to the administration of justice."

First, Judge Pincus held that Petitioner's actions satisfied the elements of the common law offense of obstructing or hindering a police officer, because Petitioner was well aware of the duty that the detective, a police officer, was in the process of performing, i.e., the investigation of the death of Mr. Tello, and that Petitioner knew of the detective's desire to question his son, who Petitioner knew to be responsible for the death of Mr. Tello.  A.R. 1852.  Judge Pincus further found that Petitioner also knew that his subsequent arrangements to help his son flee to Israel would frustrate the detective's performance of her duties.  Accordingly, Judge Pincus found that the facts satisfied the requisite elements of common law obstruction and concluded that Petitioner violated MRPC 8.4(b).  Id.

Judge Pincus next determined that Petitioner had also violated MRPC 8.4(d) by engaging in conduct that is prejudicial to the administration of justice.  Id.  Judge Pincus found that Petitioner's actions were criminal in nature and impaired the public's confidence in the entire legal profession.  Id.  Judge Pincus concluded that by sending his son to Israel in spite of the knowledge that his son was an integral party to a criminal investigation, Petitioner had acted in

4

direct contravention to the oath he swore in open court when he was admitted to the Bar of the

Court of Appeals on June 24, 1971.  A.R. 1852-53.

On May 22, 2002, Petitioner filed exceptions with the Maryland Court of Appeals to

Judge Pincus' findings and conclusions.  A.R. 1853.  On December 16, 2002, the Maryland

Court concluded that clear and convincing evidence supported Judge Pincus' findings of fact and

conclusions of law.  Id.; Sheinbein, 812 A.2d at 981.  The Maryland Court of Appeals found that

clear and convincing evidence supported Judge Pincus' conclusion that Petitioner committed the

common law crime of obstructing or hindering a police officer, and that such conduct necessarily

violated MRCP 8.4(b).  A.R. 1853; Sheinbein, 812 A.2d at 981.  The Maryland Court of Appeals

found that a lawyer's ensuring that a police investigation is thwarted by sending a main suspect

known by him to be the killer in a murder case to a distant country necessarily reflects adversely

on that lawyer's trustworthiness in violation of MRCP Rule 8.4(b).  A.R. 1853; Sheinbein, 812

A.2d at 981.

The Maryland Court of Appeals further found, in agreement with Judge Pincus, that

Petitioner's conduct was prejudicial to the administration of justice in violation of MRCP Rule

8.4(d).  A.R. 1853; Sheinbein, 812 A.2d at 981.  The Maryland Court of Appeals noted that

Petitioner, "who was familiar with the inner workings of the system and had sworn to uphold its

laws, did everything in his power to ensure that his son circumvent that system and flee to

another country, thus stalling an ongoing, legal police investigation and possible prosecution."

A.R. 1853; Sheinbein, 812 A.2d at 998.  The Maryland Court of Appeals concluded that

"[Petitioner's] actions totally stymied the criminal justice system" and that "[t]here can be no

question that the public confidence in the legal profession has been adversely affected by [Petitioner's] conduct."  A.R. 1853; <u>Sheinbein</u>, 812 A.2d at 998.

In determining the sanction for Petitioner's conduct, the Maryland Court of Appeals considered "our own court's precedent, case law from our sister states, Bar counsel's recommendations of disbarment and the unique and egregious factual scenario presented by [Petitioner's] utter abandonment of proper professional conduct in the face of the circumstances of Mr. Tello's murder" and found that it could reach "only one conclusion:  that [Petitioner] is no longer fit to practice law."  A.R. 1854; <u>Sheinbein</u>, 812 A.2d at 1006.  Accordingly, the Maryland Court disbarred Petitioner.  A.R. 1854; <u>Sheinbein</u>, 812 A.2d at 1006.

On February 6, 2003, following Petitioner's disbarment from the state of Maryland, the Court of Appeals of the District of Columbia (D.C. Court) ordered Petitioner suspended from the practice of law in the District of Columbia on an interim basis, pursuant to the reciprocal discipline provision of the Rules Governing the Bar of the District of Columbia.  A.R. 1854.  In its February 6, 2003 order, the D.C. Court directed its Board on Professional Responsibility (Board) to determine whether identical, greater, or lesser discipline, should be imposed on Petitioner in the District of Columbia.  <u>Id.</u>  Pursuant to the February 6, 2003 order, the Board conducted a review of the record of Petitioner's disbarment proceedings before the Maryland Court.  <u>Id.</u>  Petitioner participated in the Board's proceeding through counsel.  <u>Id.</u>  On or about July 31, 2003, the Board issued its Report and Recommendation recommending that the D.C. Court disbar Petitioner as identical reciprocal discipline for his misconduct in Maryland.  <u>Id.</u>  By order dated March 11, 2004, the D.C. Court disbarred Petitioner from the Bar of the District of Columbia.  <u>Id.</u>

On March 4, 2004, the Director of the USPTO's Office of Enrollment and Discipline ("OED Director") issued a Complaint against Petitioner before an Administrative Law Judge ("ALJ") pursuant to 37 C.F.R. § 10.134, charging him with violating 37 C.F.R. § 10.23(c)(5) by being disbarred from the practice of law on ethical grounds by a duly constituted authority of the State of Maryland.  A.R. 1854.  On March 31, 2004, the OED Director issued an Amended Complaint against Petitioner, in which he charged Petitioner with an additional violation of 37 C.F.R. § 10.23(c)(5) on the basis of his disbarment from the practice of law on ethical grounds by a duly constituted authority of the District of Columbia.  A.R. 1855.[5]

Both the OED Director and Petitioner filed motions for summary judgment with the ALJ. A.R. 1855.  On September 7, 2004, the ALJ issued an Order on Cross-Motions for Summary Judgment finding that the USPTO established by clear and convincing evidence that Petitioner was disbarred from practice as an attorney on ethical grounds in both the State of Maryland and the District of Columbia.  A.R. 1855.  The ALJ concluded that 35 U.S.C. § 32 authorized the discipline of Petitioner based on the violation of a disciplinary rule, including 37 C.F.R. § 10.23(c)(5), and that the USPTO had consistently applied § 10.23(c)(5) to discipline practitioners.  Id.  The ALJ found that 35 U.S.C. § 32 and 35 U.S.C. § 2(b)(2)(D) provide the USPTO broader authority "to regulate practitioner misconduct than merely addressing the underlying misconduct itself" and that the USPTO "has availed itself of this authority by addressing both convictions of criminal offenses, involving moral turpitude, dishonesty or breach of trust, and, as here, suspension or disbarment from practice as an attorney or agent on

_____

[5]  Also on March 31, 2004, the OED Director filed an Unopposed Motion to Amend the Complaint and Notice of Proceedings under 35 U.S.C. § 32.  A.R. 1855.  The ALJ granted that motion by Order on Motion to Amend the Complaint dated May 25, 2004.  Id.

ethical grounds by any duly constituted authority of a State or the United States." A.R. 1855.

The ALJ further found that the USPTO brought the proceeding seeking Petitioner's exclusion

from practice well within five years of his disbarments in Maryland and the District of

Columbia. Id. Therefore, the ALJ concluded that, assuming the five-year statute of limitations

provision in 28 U.S.C. § 2462 applied to the proceeding, the Complaint was timely filed before

the statute of limitations expired. A.R. 1856. The ALJ concluded that, based on the decisions

issued by the State of Maryland and the District of Columbia, the USPTO had established that

Petitioner was disbarred from practice as an attorney on ethical grounds in those jurisdictions.

Id. Accordingly, the ALJ determined that the USPTO established that Petitioner engaged in

conduct which constituted a violation of 37 C.F.R. § 10.23(a) and (b). Id.

On September 27, 2004, Petitioner filed a waiver and Unopposed Motion for a Briefing

Schedule with the ALJ in which Petitioner waived his right to a hearing, requested a briefing

schedule, and requested that the penalty in the matter be determined by the joint set of stipulated

documents and other filings of record. Id. On September 30, 2004, the ALJ issued an Order

Memorializing Agreed Briefing Schedule. Id.

On December 10, 2004, the ALJ issued his Initial Decision in this matter, incorporating

his September 7, 2004, Order on Cross-Motions for Summary Judgment. Id. The ALJ decided

to exclude Petitioner from practice before the USPTO "based on two *independent* grounds[.]"

Id. (emphasis in original). The first ground on which the ALJ relied was reciprocal discipline.

Id. The ALJ found no reason to depart from the earlier authority's sanction, as he found no

"'infirmity of proof' of misconduct in that earlier proceeding" and found that "no 'grave

injustice' would result from imposing that other jurisdiction's disciplinary action[.]" Id.

8

Relying on Selling v. Radford, 243 U.S. 46, 51 (1917) (Selling), the ALJ concluded that there was no showing of a lack of due process in the earlier disciplinary proceeding. Id. The ALJ further concluded that Petitioner had admitted virtually all of the findings of fact in the underlying Maryland Court proceeding and that the facts, including the one Petitioner excepted to, had been proven by clear and convincing evidence. A.R. 1857. Accordingly, the ALJ concluded that Petitioner should be excluded from practice before the USPTO "based on the imposition of reciprocal discipline stemming from the Petitioner's disbarment from the practice of law in the State of Maryland and the District of Columbia." Id.

The ALJ further found that, "independent[] of the reciprocal disbarment approach," disbarment was "the only appropriate sanction" based on his application of the criteria set forth at 37 C.F.R. § 10.154(b) to the proceeding. Id. The ALJ outlined his specific consideration of the factors listed in 37 C.F.R. § 10.154(b) and determined that Petitioner should be excluded from practice before the USPTO. Id.

Petitioner appealed the ALJ's initial decision to the USPTO Director pursuant to 37 C.F.R. § 10.155. On May 5, 2005, the USPTO General Counsel, acting on behalf of the USPTO Director, issued a Final Decision pursuant to 37 C.F.R. § 10.156(a). A.R. 1849-65. The Final Decision accepted the factual findings and legal conclusions of the ALJ, except as otherwise specified therein. Id. The Final Decision upheld the ALJ's recommended sanction on the basis of the ALJ's undisputed application of the factors set forth at 37 C.F.R. § 10.154(b). A.R. 1863.

By petition dated May 24, 2005, Petitioner requested reconsideration of the USPTO's final decision. A. R. 1868-71. On the same day, Petitioner petitioned that his discipline be

stayed pending review by this Court.  A.R. 1872-74.  On June 23, 2002, the USPTO denied both

Petitioner's request for reconsideration and his request for a stay.  A.R. 1875-77.

**ARGUMENT**

**1.    <u>Standard of Review</u>**

This Court's review of decisions of the USPTO Director with respect to disciplinary

matters is provided for by 35 U.S.C. § 32.  The standard of review is "substantial evidence."

<u>Lipman v. Dickinson</u>, 174 F.3d 1363, 1368 (Fed. Cir. 1999).  Under this standard, in order to

affirm the USPTO's decision, ". . . a court must conclude that the record as a whole contains

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

<u>Id.</u> (quoting <u>Klein v. Peterson</u>, 866 F.2d 412, 414 (Fed. Cir. 1989)).

To the extent that the USPTO's construction of a statute is at issue, the Court must apply

the familiar two-step analysis found in <u>Chevron, U.S.A., Inc. v. Natural Resources Defense

Council, Inc.</u>, 467 U.S. 837, 843 (1984).  If the Court determines that the statutory provision is

clear, the Court's inquiry ends.  <u>Chevron,</u> 467 U.S. at 843.  If the provision is silent or

ambiguous regarding a specific issue, the Court must consider "whether the agency's answer is

based on a permissible construction" of the statute.  <u>Id.</u>  To survive judicial scrutiny, the agency's

interpretation "need not be the best or most natural one," so long as it is reasonable.  <u>Pauley v.

BethEnergy Mines, Inc.</u>, 501 U.S. 680, 702 (1991).  Indeed, the interpretation of a statute by the

agency charged with its administration generally is entitled to "great deference."  <u>Udall v.

Tallman</u>, 380 U.S. 1, 16 (1965); <u>Chevron</u>, 467 U.S. at 844 ("We have long recognized that

considerable weight should be accorded to an executive department's construction of a statutory

scheme it is entrusted to administer"); <u>Good Samaritan Hosp. v. Shalala</u>, 508 U.S. 402, 409

10

(1993). Where the agency's interpretation is a reasonable one, the courts "may not substitute

[their] own construction of [the] statutory provision." Fernandez v. Brock, 840 F.2d 622, 631

(9th Cir. 1988); accord, e.g., Shalala v. Guernsey Mem. Hosp., 514 U.S. 87, 94-95 (1995).

      Similarly, this Court must confer "substantial deference" upon "an agency's construction

of its own regulations." Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994); Lyng v.

Payne, 476 U.S. 926, 939 (1986); Star Fruits S.N.C. v. United States, 383 F.3d 1277, 1282 (Fed.

Cir. 2005). See also American Train Dispatchers Assoc. v. ICC, 54 F.3d 842, 847 (D.C. Cir.

1995); Randolph-Sheppard Vendors of America v. Weinberger, 795 F.2d 90, 111 (D.C. Cir.

1986) ("The scope of the statute and the regulations promulgated thereunder should, in the first

instance, be one for the agency charged with its administration."). The Court's role is not to

ensure that the agency's application of its regulations to the facts is the most natural or logical,

the only possible interpretation, or the one that the Court would have adopted in the first

instance, but only that it is reasonable and consistent with the regulations. National Trust for

Historic Preservation v. Dole, 828 F.2d 776, 782 (D.C. Cir. 1987); Belco Petroleum Corp. v.

FERC, 589 F.2d 680, 685 (D.C. Cir. 1978). The agency is entitled to even greater deference in

interpreting its regulations than in reading its statutory mandate. Wyoming Outdoor Council v.

United States Forest Service, 165 F.3d 43, 52 (D.C. Cir. 1998); Puerto Rico Elec. Auth. v.

FERC, 848 F.2d 243, 249 (D.C. Cir. 1988); see also Lyng, 476 U.S. at 939. Thus, the USPTO's

interpretation and application of its regulations must be accepted unless it is "manifestly

unreasonable." Liberty Maritime Corp. v. U.S., 928 F.2d 413, 419 (D.C. Cir.1991) (quoting

National Wildlife Federation v. Gorsuch, 693 F.2d 156, 174 (D.C. Cir. 1982)).

**2.    Petitioner Has Admitted All Facts Upon Which the USPTO's Final Decision Is Based.**

As set forth above, this Court must uphold the facts found by the USPTO so long as they are supported by substantial evidence.  In this case, however, Petitioner has not challenged any of the USPTO's factual determinations, and indeed has affirmatively stipulated before this court the essential facts necessary to uphold the discipline at issue.  Petitioner has admitted (as he must) that he was disbarred by both the State of Maryland and the District of Columbia.  Petition at 4.  Petitioner has also admitted that "[o]n September 21, 1997, Petitioner sent his son to Israel, while the authorities wanted to question his son in connection with a murder."  Petition at 3-4.  Petitioner has stipulated that his disbarments constitute disbarment on ethical grounds.  Petition at 7.  Indeed, Petitioner has stipulated that his conduct on September 21, 1997 would itself have provided proper grounds for the USPTO to discipline Petitioner.  Id.  Thus, the court in this case need look no further than Petitioner's Petition to find the factual predicate for the USPTO's decision.

**3.    The USPTO Properly Reached Its Decision by Applying the Plain Meaning of Its Regulation to the Undisputed Facts.**

The USPTO's interpretation of its own regulations is entitled to substantial deference.  Thomas Jefferson Univ., 512 U.S. at 512.  In this case, however, no interpretation is necessary.  The plain and unambiguous language of the regulation makes Petitioner subject to discipline on the basis of the undisputed facts.

Regulations are to be construed in the same manner as statutes, by ascertaining their plain meaning.  Tesoro Hawaii Corporation v. United States, 405 F.3d 1339, 1346 (Fed. Cir.  2005).  Title 37 C.F.R. § 10.23 (a) provides that:  "[a] practitioner shall not engage in disreputable or gross misconduct."  Section 10.23(b) imposes further prohibitions upon practitioners, including,

inter alia, "(1) [v]iolat[ing] as Disciplinary Rule;" "(5) [e]ngag[ing] in conduct that is prejudicial

to the administration of justice;" and "(6) [e]ngag[ing] in any other conduct that adversely affects

a practitioner's fitness to practice before the office."  Section 10.23(c) specifies that "[c]onduct

which constitutes a violation of paragraphs (a) and (b) of this section includes, but is not limited

to: . . . (5) Suspension or disbarment from practice as an attorney or agent on ethical grounds by

any duly constituted authority of a state or the United States . . . ."  The meaning of the rule

could not be plainer:  a practitioner who is disbarred by a state is deemed to have violated 37

C.F.R. § 10.23(a) and (b).  Petitioner was charged with violation of 37 C.F.R. § 10.23(c)(5).

Petitioner did not dispute that the was disbarred by both Maryland and the District of Columbia.

Accordingly, the USPTO properly determined that he had violated the § 10.23(c)(5).  A.R. 1849-

65.  This determination was compelled by the plain language of the regulation and must be

upheld.

**4.      Petitioner's Arguments Respecting the Proper Reading of 37 C.F.R. § 10.23 Fail at their Ultimate Step.**

Most of Petitioner's Petition consists of various statutory authority and regulatory

interpretation arguments.  Petition at 8-23.  These arguments converge at a single penultimate

step:  Petitioner asserts that the words "conduct that results in" must be read into 37 C.F.R.

§10.23(c)(5) so that the paragraph is interpreted as prohibiting "[c]onduct that results in

suspension or disbarment . . . on ethical grounds."  Petition at 14-15.  For the reasons set forth in

subsequent sections of the memorandum, Petitioner's various arguments are entirely unavailing.

They are also unmeritorious, as rewriting the regulation as Petitioner proposes would not afford

him any relief.

There is no question that the undisputed facts would establish a violation of §

10.23(c)(5), even if it contained the words Petitioner asks this court to insert into it.  Indeed,

Petitioner has stipulated not only that he was disbarred by both Maryland and the District of

Columbia, but also that he in fact engaged in the conduct upon which these disbarments were

based.  Petition at 3-4, 7.  Instead, Petitioner argues that because the underlying conduct

occurred in 1997, and the USPTO's administrative complaint was filed in 2004, the USPTO's

action was barred by what Petitioner asserts is the applicable five-year statute of limitations

found in 28 U.S.C. § 2462.[6]  Even if § 10.23(c)(5) were read as Petitioner urges, however, the

instant proceedings would still have been initiated within the five-year statute of limitations.

Petitioner's statute of limitations argument disregards the text of 28 U.S.C. § 2462.  The

statute requires an administrative complaint to be brought "within five years from the date the

claim first accrues."  "A claim normally accrues when the factual and legal prerequisites for

filing suit are in place."  3M Company v. Browner, 17 F.3d 1453, 1460 (D.C. Cir. 1994).

Petitioner's rewritten paragraph (c)(5) would require two prerequisites to suit:  (1) conduct

which (2) results in suspension or disbarment.  Plainly, no claim against practitioner under

paragraph (c)(5) could lie for conduct that did not, or had not yet, resulted in suspension or

disbarment; the second prerequisite for suit would not yet have been satisfied.  Instead, the claim

would first accrue when a practitioner was suspended or disbarred.  Petitioner was first disbarred

on December 16, 2002, and the administrative complaint was filed well within five years

thereafter.

---

[6]The USPTO's Final Decision assumed without deciding that § 2462 applies to its disciplinary proceedings.  A.R. 1849-65.  Similarly, this pleading will assume, arguendo that the statute is applicable.

Having stipulated that his 1997 conduct would itself provide grounds for discipline under the USPTO's rules, Petitioner asserts that the statue of limitations on that conduct ran 85 days before his Maryland disbarment.  Petition at 21-22.  According to Petitioner, the USPTO's determination that the five-year period began running upon his Maryland disbarment "ranks right up there with transubstantiation in its miraculous qualities."  Petition at 22.  Be that as it may, the determination is also directly on point with the D.C. Circuit's holding in <u>Proffitt v. FDIC</u>, 200 F.3d 855 (2000).  In that case, the Appellant, a bank director, engaged in misconduct in 1990 which resulted in a civil judgment being entered against the bank in 1994.  In 1996, the FDIC initiated disciplinary action under 12 U.S.C. § 1818(e), which authorizes the removal of bank officers.  One prong of the statute is satisfied where, <u>inter alia</u>, a bank "has suffered or probably will suffer financial loss or other damage."  <u>Id</u>.  The appellant argued that, because the FDIC could have determined that the bank "probably will suffer" financial harm at the time of his 1990 conduct, the 1996 action was barred under § 2462.  The court, rejected this argument, observing that, under the applicable statute,  "[t]he same misconduct can produce different effects at different times, resulting in separate . . . claims and separate accruals."  <u>Id</u> at 863.  More specifically, the court held that:

> Whenever an institution "has suffered" financial loss, an action based on the "will probably suffer" language would have been available before the financial loss has in fact occurred.  If the statute of limitations began running as to <u>all</u> effects as soon as the first effect occurred, the "will probably suffer" violation would always trigger the statute's accrual.  Separate accrual for each alternative effect gives meaning to all of the statutory language.

<u>Id.</u> at 863-864.

Similarly, conduct that ultimately results in disbarment in a state will usually (though not necessarily) also directly violate the USPTO's disciplinary rules.  As with the FDIC statute at

issue in <u>Proffitt</u>, finding separate accruals for the separate violations gives meaning to all portions of the regulation.  Indeed, the basis for separate accruals here is far stronger than that in <u>Proffitt</u>, because engaging in unethical conduct and being disbarred constitute entirely separate offenses under the USPTO's rules.

A cause of action under 37 C.F.R. § 10.23(c)(5), even as Petitioner would redraft that paragraph, cannot by its terms accrue until a practitioner is suspended or disbarred.  The proceedings here were initiated within five years after Petitioner's disbarment.  For these reasons, the Court need not even consider the remainder of Petitioner's arguments.  Even if the regulation were interpreted (and redrafted) as Petitioner asserts it should be, the Court still would be required to uphold Petitioner's exclusion from practice before the USPTO.

**5.**      **<u>Petitioner's Attempt to Rewrite the Regulation is Unavailing.</u>**

> **A.**      **<u>Petitioner's Arguments Cannot Overcome the Plain Language of the Regulation.</u>**

Petitioner argues that 37 C.F.R. § 10.23(a) and (b) and the introduction to (c) refer to conduct or misconduct by a practitioner, that disbarment by a court is not conduct or misconduct by a practitioner, and that §10.23(c)(5) therefore must be rewritten to prohibit "conduct by a practitioner" that results in disbarment.  Petition at 12-14.  In effect, Petitioner argues that because paragraph (c)(5) does not describe conduct, there is an internal conflict in the regulation, that this conflict creates an ambiguity, and that the ambiguity must be resolved by rewriting paragraph (c)(5).  <u>Id.</u>  Petitioner's argument fails both because there is no ambiguity in the regulation, and because, even if there were ambiguity, the rewrite he proposes would be inconsistent with the provisions's manifest intent.  Petitioner may be correct that, in their most natural sense, the terms "conduct" or "misconduct" would not include becoming the subject of a

16

disbarment. Absent paragraph (c)(5), Petitioner's disbarment might well not itself provide a basis for sanctions under the other paragraphs of § 10.23. However, paragraphs (c)(1) through (c)(20) of the regulation are provided to give meaning to the general prohibitions that precede them. Paragraph (c)(5) dictates that this meaning must include disbarment by a state court. Similarly, paragraph (c)(1) permits disciplinary action to be based upon "[c]onviction of a criminal offense involving moral turpitude, dishonesty, or breach of trust." Indeed, the preamble to the Federal Register Notice promulgating the regulation at issue expressly described § 10.23(c)(5) as being intended to "define misconduct as suspension or disbarment on ethical grounds." 50 Fed. Reg. 5158, 5161, February 6, 1985. Perhaps the regulation would have read more smoothly if it had fit disbarment by a state under a rubric other than "conduct" or "misconduct." "[I]n interpreting a statute, however, we are to determine its true, natural meaning, where ascertainable, irrespective of cumbersome syntax." United States v. Barnes, 295 F.3d 1354, 1362 (D.C. Cir. 2002). The meaning here is unmistakably clear.

Even if Petitioner could establish a conflict between paragraph (c)(5) and the preceding paragraphs of the section, the conflict would not properly be resolved by reading paragraph(c)(5) to prohibit conduct that results in disbarment. If resort must be had to adding words that do not appear in the regulation, these words could just as easily be added to the earlier portion of § 10.23. For example, § 10.23(c) could be reworded to say "Conduct or circumstances which constitute a violation of paragraphs (a) and (b) include, but are not limited to:" The mere fact that the words Petitioner suggests could be added to the regulation says nothing about the intent of the drafters. Indeed, as the language of the section requires, the USPTO's Final Decision read the word "conduct" to encompass the circumstances described by § 10.23(c)(5), A.R. 1859, and that interpretation is entitled to deference. Udall, 380 U.S. at 16; Chevron, 467 U.S. at 844 ("We

17

have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer").

The regulatory history of 37 C.F.R. §10.23 further confirms that its apparent, plain meaning, was the intended one.  Upon withdrawal of an earlier proposed rule (discussed further below), the section was published in nearly its current form in a Notice of Proposed Rulemaking (NPRM).  See 49 Fed. Reg. 10012, March 16, 1984.  The NPRM's preamble contained the follow explanation:

> Subparagraph (5) of § 10.23(c) would provide for suspension or exclusion from practice before the PTO after entry of an order suspending or excluding a practitioner by a duly constituted authority of the United States (e.g., a federal court or another federal agency) or a state (e.g., a state supreme court or a state bar). Suspension or exclusion from practice before the PTO based on disciplinary action by another tribunal would not occur prior to notice and opportunity for a hearing and would continue to be governed by the principles of  Theard v. United States, 354 U.S. 278 (1957); Selling v. Radford, 243 U.S. 46 (1917); and In re Thies, 662 F. 2d 771 (D.C. Cir. 1980). See In re Davis, 982 Official Gazette 2 (May 1, 1979), aff'd. sub nom., Davis v. Commissioner, No. 80-1036 (D.C. Cir. Mar. 31, 1981), cert. denied, 454 U.S. 1090 (1981) (attorney excluded by PTO based on disbarment in Minnesota, Matter of Davis, 264 N.W. 2d 371 (Minn. 1977)); In re Hodgson, 1023 Official Gazette 13 (October 12, 1982) (attorney excluded before the PTO after disbarment in Virginia); In re Pattison, 1023 Official Gazette 13 (October 12, 1982) (attorney excluded by PTO after disbarment in Maryland, Attorney Grievance Commission of Maryland v. Pattison, 441 A. 2d 328 (Md. 1982)); and In re Kraft, 954 Official Gazette 550 (January 11, 1977), aff'd. sub nom., Kraft v. Commissioner, No. 77-0087 (D. D.C. Nov. 3, 1977) (attorney excluded from practice before PTO based on suspension order of the Supreme Court of Idaho).

Id at 10015.  Plainly, the intent of the rule is to permit the USPTO to take disciplinary action against a practitioner based on a suspension by disbarment by a state.

Petitioner argues that the reference in the final regulation's preamble to this Court's unpublished decision in Poole v. United States, No. 84-0300, 1984 WL 742 (D. D.C. 1984) supports his interpretation of the regulation.  Specifically, in the preamble, the USPTO declined

18

an invitation to define the terms "disreputable" and "gross misconduct" in § 10.23(a) on the

grounds that the terms appeared in the governing statue and needed no further definition,

referring readers to the <u>Poole</u> decision "for a discussion of disreputable."  50 FR 5158 at 5163.

While the preamble language would be relevant in assessing whether a practitioner was

disreputable on the basis of circumstances other than those set forth in the non-exclusive list at §

10.23(c), it clearly cannot be intended to write items out of that list.  In any event, the court in

<u>Poole</u> rejected that petitioner's argument that an IRS statute permitting discipline against a

practitioner "shown to be disreputable" referred "<u>solely</u> to a general loss of reputation."  <u>Poole</u>,

No. 84-0300, 1984 WL 742 (D. D.C. 1984) (emphasis added).  While the decision upheld the

IRS's determination of reputability on the basis of specific conduct, it in no way held that a

regulation resting such a determination on other factors would be invalid.  <u>Id.</u>

Similarly unavailing is Petitioner's reliance on a 2003 proposed rule for evidence of the

intent behind the current rule, promulgated in 1985.  To begin with, the proposed rule is just that,

and may ultimately be adopted in substantially different form or not at all.  Even if the proposed

rule might otherwise be considered to illuminate the agency's intent 18 years earlier, the

fundamental differences between the proposed rule and the current one would preclude the

parallels Petitioner attempts to draw.  To the extent the proposed rule may be viewed to have any

relevance to the interpretation of the current rule, under the current rule, as discussed above,

disbarment by a state is treated as a form of misconduct.  Practitioners accused of violations of §

10.23(c)(5) are entitled to a full administrative proceeding of the type enjoyed by Petitioner here,

with the OED Director presenting evidence before an ALJ, the ALJ entering an initial decision

appealable to the USPTO Director, and discipline taking effect only upon the decision becoming

final.  <u>See generally</u> 37 C.F.R. §§ 10.130-10.160.  Section 11.24 of the proposed rule would take

19

an entirely different approach to discipline under these circumstances.  Under the proposed rule,

the USPTO Director would enter an order imposing an interim suspension upon receipt of a

certified copy of the state disciplinary order.  68 Fed. Reg. 69442, 69534, December 13, 2004

(proposed 37 C.F.R. § 11.24(b)(1)).  The <u>practitioner</u> would then have the burden of establishing

to the USPTO Director, by clear and convincing evidence, that one of four specific factors

compelling different treatment by the USPTO applied.  <u>Id.</u> (Proposed § 11.24(c)).  Unless the

practitioner succeeded in establishing one of these factors, the USPTO Director would be

authorized to impose discipline identical to that entered by the state.  <u>Id.</u> (Proposed § 11.24(e)).

The proceedings applicable in other disciplinary cases would be expressly inapplicable to

proceedings under the proposed reciprocal discipline rule.  <u>Id.</u> (Proposed § 11.24(b)(3)).

     In short, the USPTO has proposed to move from the current system, where disbarment or

suspension by a state is treated as a fact like any other that may support USPTO discipline, to an

entirely different system, where the state's decision establishes the underlying conduct and the

practitioner bears the burden of demonstrating that the USPTO's discipline should be different

than that imposed by the state.  If anything, the proposal to move to a system where the state's

decision established a legal presumption as to the underlying conduct highlights the fact that,

under the current system, the decision itself constitutes the substance of the offense.

### B.    <u>The USPTO's Regulation Reasonably Implements the Applicable Statute.</u>

     Petitioner argued before the ALJ that the USPTO was authorized under 35 U.S.C. § 32 to

suspend or disbar a practitioner only for misconduct.  A.R. 1857.  The ALJ rejected that

argument, observing Petitioner read the statute and regulations too narrowly and selectively, and

that the use of the word "conduct" in the statute and regulations was not intended to limit the

promulgation or application of the Disciplinary Rules solely to underlying misconduct.  A.R.

1859.  The USPTO's final decision adopted this analysis and further held that "[c]ertainly,

suspension or disbarment by a state bar could constitute grounds, within the statue's

contemplation and literal terms, for finding a practitioner disreputable within the meaning of 35

U.S.C. § 32."  Id.  Petitioner does not dispute this holding.  Indeed, Petitioner explicitly concedes

that he:

> has little doubt that the USPTO could draft a valid regulation under its authority
> granted in 35 U.S.C. §32 which would allow exclusion from practice of a
> practitioner solely on the grounds that the USPTO finds the practitioner to be
> disreputable.

 Petition at 12.

Thus, Petitioner has stipulated that he was disbarred by Maryland and Virginia, does not

dispute that such disbarment would provide grounds for finding him disreputable, and concedes

that the USPTO has authority to issue a regulation that would exclude him from practice under

these circumstances.  Petitioner's sole argument is that the USPTO has not issued a regulation

that would permit his exclusion upon becoming disreputable.  For the reasons discussed above,

however, 37 C.F.R. § 10.23(c)(5) does precisely that.  Although Petitioner argues that § 10.23

does not implement the authority to discipline disreputable practitioners under 35 U.S.C. § 32,

clearly it does.

As discussed above, 35 U.S.C. § 32 permits the USPTO to exclude a practitioner who

is"shown to be incompetent or disreputable, or guilty of gross misconduct, or who does not

comply with [the USPTO's disciplinary rules]."  37 C.F.R. § 10.23(a) provides that a practitioner

shall not engage in "disreputable or gross misconduct."  Thus, the regulation, by its very terms,

is intended to reach  misconduct that is "disreputable" as well as that which is "gross," and thus

implements both the "shown to be disreputable" and the "gross misconduct" prongs of the statute.

Indeed, consideration of the regulatory history of 37 C.F.R. §10.23 dispels any possible doubt as to whether the regulation was intended to reach practitioners shown to be disreputable. On August 11, 1983, the USPTO first proposed changes to its disciplinary rules. 48 F.R. 36478. These changes included a proposed 37 C.F.R. § 1.361, which would "define[] by means of a non-exclusive listing, conduct which is considered prima facie disreputable and would result in suspension or exclusion from practice." Id. at 37479. The body of the proposed section read "Disreputable conduct for which an attorney or registered agent may be suspended or excluded from practice before the Patent and Trademark Office includes but is not limited to:" Id. at 36481. Following this language appeared a list of nine lettered items, including "(a) Conviction of a criminal offense . . . involving dishonesty or breach of trust," and "(e) Disbarment or suspension from practice as an attorney by any duly constituted authority of any State, Possession, Commonwealth, the District of Columbia, or by any Federal Court." Id. In 1984, after holding two oral hearings and considering written comments, the USPTO withdrew the 1983 proposed rule and issued an Advanced Notice of Proposed Rulemaking (ANPRM). 49 Fed. Reg. 10012, March 16, 1984. The ANPRM set forth 37 C.F.R. § 10.23 in largely its final form. As explained in the preamble, "Section 10.23 would define misconduct. Paragraph (a) of § 10.23 is based on 35 U.S.C. 32 and would prohibit disreputable and gross misconduct." Id. at 10014. This paragraph was set forth in language identical to that ultimately adopted. Id at 10028. Paragraph 10.23(c) was also quite close to the current rule, containing the prohibitions on conviction and suspension or disbarment, and expanded from the nine items in the original proposed § 1.361 to 18. Thus, what became § 10.23(c)(5) was originally proposed in a section

22

prohibiting "disreputable" conduct, and was ultimately adopted in a regulation explicitly drafted to parallel 35 U.S.C. § 32 and expanded to reach both "disreputable" and "gross" misconduct. There can be no doubt that the paragraph was intended to implement the "disreputable" prong of 35 U.S.C. § 32.

Whether or not being subject to disbarment could be considered "gross misconduct" as that term is used in the statue, Petitioner has conceded that it can be considered to render him disreputable, and the regulation is clearly authorized under that prong of the statute. As previously shown, misconduct, at least as that term is used in the regulation, includes disbarment. Whether the USPTO could interpret the term "misconduct" in the statute as broadly as the term is used in the regulation is immaterial because the regulation is clearly within the scope of the "shown to be disreputable" prong of the statute.

While Petitioner has conceded that the USPTO has authority to issue regulations excluding practitioners established to be disreputable, it is worthwhile to note that there are important policy reasons supporting the regulation under which Petitioner was disciplined. First, and most obviously, the regulation permits the USPTO to protect the public from unethical practitioners without having to relitigate issues already decided by a state court. Further, permitting discipline upon proof of the state decision, rather than treating the state decision as proof of the underlying conduct, itself provides significant benefits.

By seeking admission to a state bar, attorneys voluntarily make themselves subject to the disciplinary rules of that state. An attorney who demonstrates inability or unwillingness to comply with these rules is likely to display similar heedlessness with respect to the USPTO's rules – regardless of whether the specific conduct that violates the state rules is itself prohibited by the USPTO. By making suspension or disbarment by a state a ground for discipline, the

USPTO protects the public from attorneys whose conduct elsewhere proves them refractory, yet avoids placing itself in the uncomfortable position of interpreting and enforcing a state's disciplinary rules.

The USPTO rule furthers federal-state comity in another way as well.  USPTO registration of an attorney or agent preempts the authority of a state to prohibit what otherwise would be the unauthorized practice of law.  See Sperry v. Florida ex. rel. Florida Bar, 373 U.S. 379 (1963).  Thus, absent suspension or exclusion by the USPTO, a USPTO practitioner can continue to practice law in the very state that has disbarred him.   Section 10.23(c)(5) ensures that the USPTO can prevent such a situation, again regardless of whether the conduct resulting in the state disbarment itself violates the USPTO's rules.

Finally, practitioners disciplined by one or more states can, as Petitioner has, shift their practice exclusively to work before the USPTO.  Section 10.23(c)(5) permits the USPTO to protect itself, and the public with business before it, from becoming a dumping ground for unethical practitioners.  While such a situation could be partially avoided by attacking the underlying conduct under the USPTO's disciplinary rules, a practitioner's incentive to shift to USPTO work occurs only upon the entry of state discipline and, as discussed above, the conduct upon which the state discipline is based may not always violate the USPTO's rules.

Petitioner argues §10.23(c)(5) is invalid because it conflicts with 28 U.S.C. § 2462.  This argument appears to be based on Petitioner's erroneous assumption that the latter statue provides him with a substantive right to be free of disciplinary proceeding initiated more than five years after he engages in questionable conduct.  As explained above, § 2462 says nothing about underlying conduct, but rather establishes a limitations period triggered by the accrual of a claim. In this case, the relevant claim is a creature of regulation, and Petitioner points to no authority

requiring that an agency define the elements of a claim under its regulations so as to trigger §
2462 at a specific point.[7]

### 6.    Petitioner's Due Process Argument is Baseless.

Petitioner argues that he was denied due process because the administrative complaint
did not charge him with disrepute.  Petition at 12.  This is incorrect.  Petitioner was in fact
charged with a violation of 37 C.F.R. § 10.23(c)(5), which on its face provides for sanctions on
the basis of disbarment.  A.R. 25. The USPTO's rules only require that an administrative
complaint "fairly inform[] the respondent of any violation of the Disciplinary Rules which form
the basis for the disciplinary proceeding so that the respondent is able to adequately prepare a
defense." 37 C.F.R. § 10.134(b).  Similarly, 5 U.S.C § 554(b) requires merely that persons
entitled to notice of an agency hearing be timely informed of ". . . (3) the matters of fact and law
asserted."  Notice under 5 U.S.C. § 554(b) is adequate so long as party to an administrative
proceeding is informed of the issues in controversy and is not misled.  St. Anthony's Hospital v.
HHS, 309 F.3d 680, 707-708 (10th Cir. 2002).  The Amended Complaint alleged the fact of
Petitioner's disbarments (including the background thereto), and asserted the legal conclusion
that these facts established a violation of 37 C.F.R. § 10.23(c)(5).  Petitioner asserted a defense,
arguing, inter alia, that the regulation under which he was charged was not a valid exercise of the
USPTO's authority under 35 U.S.C. § 32.  The initial decision and the final decision, in turn,
rejected this defense, in part on the grounds that the regulation was a valid interpretation of the
"shown to be disreputable" prong of the statute.  Petitioner has pointed to no legal requirement

---

[7]  Indeed, if Petitioner is correct that the possible applicability of § 2462 to USPTO proceedings
was not recognized before 1996 (Petition at 17), the effect on the limitations period could not
have been even a consideration in drafting the current regulation.

that a complaint anticipate all defenses a respondent may assert and set forth all legal arguments

which may ultimately be used to refute such defenses, and plainly no such requirement exists.

## **CONCLUSION**

For the foregoing reasons, Respondent is entitled to a grant of Summary Affirmance, and

the Petition should be dismissed with prejudice.

Respectfully submitted,

/s/_____
KENNETH L. WAINSTEIN, D.C. Bar No. 451058
United States Attorney

/s/_____
R. CRAIG LAWRENCE, D.C. Bar No.  171538
Assistant United States Attorney

/s/_____
Heather Phillips
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C.  20530
(202) 307-

27

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Respondent's Motion for Summary Affirmance and accompanying certified record was, pursuant to previous arrangements made with pro se plaintiff Sol Sheinbein, made available for pick up at the U.S. Attorney's Office, Washington, D.C., to his representative Kenneth Dobyns, on September 23, 2005.

_____/s/_____
HEATHER R. PHILLIPS
Assistant United States Attorney
Judiciary Center Building
555 4th Street, NW, Rm. E4212
Washington, D.C. 20001
(202) 514-7139