## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOL SHEINBEIN  )<br>  )<br>  )<br>PLAINTIFF  )<br>  )<br>V  )<br>  )<br>JON DUDAS  )<br>Director, U.S. Patent & Trademark Office  )<br>  )<br>  )<br>DEFENDANT  ) | **CIVIL ACTION NO. 05-1460**<br>**(ESH)** |

### RESPONSE TO RESPONDENT'S MOTION FOR JUDGMENT OF AFFIRMANCE

Plaintiff, Sol Sheinbein, hereby responds to the Respondent's Motion for Judgment of Affirmance and requests that the Honorable Court deny same and grant the Motion for Summary Judgment filed by Plaintiff concurrently herewith.

Before responding to Defendant's Motion, Plaintiff would like to alert the Court to a minor issue that needs resolution, namely identification of the parties involved in the instant Civil action. When filing the instant appeal/petition, Plaintiff asked the Clerk of the Court how he should label the parties, and was advised that he should use the titles (Plaintiff and Defendant) listed above. The Court's Order dated August 24, 2005 adopted the above titles, as did the US Patent and Trademark Office in Certifying the Administrative Record. On the other hand, Defendant's Counsel has decided to identify the parties as Petitioner and Respondent. Plaintiff will continue to use the identifications Plaintiff has been employing at the Court's direction in both the instant response and the Motion for Summary Judgment.

While Plaintiff's points are set forth in Plaintiff's Petition that initiated these proceedings and the concurrently filed Motion for Summary Judgment, Plaintiff will point out errors, inconsistencies and misrepresentations set out in the following pages of Defendant's Motion.

1.    At Page 12, lines 9-10, Counsel for Defendant ("Counsel") states that Plaintiff stipulated that his conduct on September 21, 1997 would have provided proper grounds for the USPTO to discipline Plaintiff. Mysteriously missing from this quoted sentence is the vital language "if initiated within the five-year statutory period". The USPTO did not initiate the Complaint against Plaintiff until after the five-year statutory period had run.

2.    In Paragraph 3., Pages 12-13, Counsel states that the USPTO reached its decision by applying the "plain and unambiguous language" of its regulation. The fact is that the "plain and unambiguous language" of this regulation allows for disciplinary action based on misconduct of the practitioner. Being considered disreputable, or being disbarred, is not misconduct of the practitioner.

3.    Counsel, in Paragraph 4 at Pages 13-16, argues that even if the language ("conduct that results in" suspension or disbarment) proposed by Plaintiff (in an effort to interpret the regulation in such a way that it would be consistent, readable, logical and reasonable) were included in the regulation, the Court would still be required to uphold Plaintiff's exclusion, since a cause of action under 37 CFR §10.23(c)(5) cannot accrue by its terms until a practitioner is suspended or disbarred, and the Court need not consider any of Plaintiff's arguments. Support for this proposition is based on Proffitt v. FDIC, ("Proffitt") 200 F.3d 855 (2000).

Counsel has misrepresented or misunderstood the meaning of Proffitt in the most basic

and fundamental manner:

Proffitt held that the five year statute of limitations period starts to run as soon as the three conditions set forth in the statute were satisfied: Misconduct, effect (with two options, actual or probable financial loss) and culpability.  Since the second condition (effect) was written in the alternative, the accrual date can be either when the bank has suffered actual financial loss or would probably suffer financial loss.

The underlying 35 U.S.C. §32 statute involved in these proceedings allows the USPTO to establish regulations providing for disciplinary action based on a practitioner being shown to be (1) incompetent or (2) or disreputable or (3) guilty of gross misconduct.  Unlike the situation in Proffitt, the specific USPTO regulation Plaintiff was charged under provides for only one condition to trigger the accrual date, namely misconduct.

Plaintiff does not deny that the USPTO had the authority to draft a regulation which would have allowed it to exclude a practitioner based on the practitioner being disreputable. It is probable that the USPTO could have enacted a regulation allowing it to exclude a practitioner merely for being disreputable, without any reference to misconduct. If they had done so, the statute of limitations would begin running, when the person became disreputable. The USPTO did not do so and did not intend to do so.  See 50 F.R. 5163 (A.R. 1477) where the USPTO referred to Poole v. United States 54 A.F.T.R. 2d (P-H) 84-5536 (D.D.C. June 29, 1984) for a definition of disreputable in an explanation of its then-proposed regulations.  A study of the decision in the Poole case makes it clear that the only meaning of disreputable that the case defined was in the case of disreputable conduct, which, in the case of attorneys, was said to include unprofessional conduct. Disreputability, absent conduct, was not considered and could

not have been intended by the USPTO when it cited the Poole case to provide a definition of disreputable.

The regulation which the USPTO chose to enact defined misconduct as the operative link to the 35 U.S.C. §32 statute and placed disbarment as a subcategory of misconduct. That being the case, the statute of limitations for USPTO actions begins running with the misconduct, and not with any subsequent state disbarment (which not conduct of a practitioner), and not with becoming disreputable.

As set forth in the USPTO regulations, disbarment based on ethical grounds is an example of and provides proof of misconduct. Disbarment is an example of something that could be used to prove that there had been the type of conduct constituting the sole requirement, "misconduct." The accrual date for that was not when Plaintiff was disbarred, but it arose when the facts giving rise to the cause of action for the unethical conduct arose.

4.    At Page 16, last two lines, and Page 17, lines 9-10, Counsel acknowledges that Plaintiff "may be correct that, in their most natural sense, 'conduct' or 'misconduct' would not include becoming the subject of a disbarment", and that "[p]erhaps the regulation would have read more smoothly if it had fit disbarment under a rubric other than 'conduct' or 'misconduct'".

In fact, the USPTO interpretation of the 37 CFR §10.23(c)(5) regulation throughout these proceedings has not been a reasonable one entitled to deference. It has been "manifestly unreasonable", and not entitled to any weight. To urge that Plaintiff has committed misconduct for having been disbarred, when he did everything he could to prevent the disbarment, and the disbarment is not his conduct, adds insult to injury.

The fact is that the USPTO had consistently interpreted this regulation differently, and

looked at the conduct that led to the disbarment as the basis for the discipline, and not at the disbarment itself. See *In the Matter of Ralph L. Marzocco*, Proceeding No. D00-04 (A.R. 66-69) and *Bovard v. Barron*, Proceeding No. D99-02 (A.R. 70-77).

In both the *Barron* case and the *Marzocco* case, the practitioner was disbarred on ethical grounds from a state bar for professional misconduct. In neither case did the practitioner respond to the USPTO complaint before the ALJ. In both cases, the ALJ found that it could not exclude the practitioner from practice before the USPTO because no record had been developed respecting all of the circumstances surrounding the professional misconduct, and so all it could do at that point was to provide an indeterminate suspension, allowing the practitioner to provide a later explanation for the misconduct. The ALJ recommended such a result to the USPTO in both cases, and the USPTO apparently accepted the recommendations in disposing of these cases.

This makes it clear that the USPTO, in interpreting its regulations prior to the present case, has considered the state disbarment as an indication or proof of the professional misconduct, but unless it could prove the type of professional misconduct, the USPTO could not resolve the matter by permanently excluding the practitioners. Mere disbarment was not considered sufficient proof of misconduct for permanent exclusion.

In the present case, the USPTO has reinterpreted its own regulations so that the type or time of the misconduct is not relevant, so long as there has been state disbarment. State disbarment in the present case is assumed to be sufficient to exclude a practitioner permanently from practice. But if that were the USPTO traditional interpretation of its regulations, it would have been sufficient in the *Barron* and *Marzocco* cases to prove the disbarment, and the

type of professional misconduct would not have been relevant.

If the USPTO is to be allowed to make illogical interpretations of its own regulations, it should at least be required to be consistent and to interpret the regulations the same illogical way every time. It should not be allowed to generate a new and inconsistent interpretation of its regulations, contrary to its earlier interpretation, to meet each new situation.

5.    Counsel states that even if there is a "conflict" between paragraph (c)(5) of Section 10.23 and preceding paragraphs of the section, the "conflict" could be resolved with the insertion of the words "or circumstances" after the word "conduct" in clause (c).    Such a proposed solution fails for three basic reasons:

(a)    Plaintiff was not charged with "circumstances". He was charged with "misconduct", and he is entitled to know what are the charges he is to defend against.

(b)    Correction of the regulation requires not only correcting clause (c) in the manner suggested, but also clauses (a) and (b), as well as the title of Section 37 CFR §10.23, as well as either redefining the definition of a Disciplinary Rule, 37 CFR §10.20, which requires practitioner misconduct, or redefining the elements of a Complaint in 37 CFR §10.134 that they do not include a Disciplinary Rule violation.

(c)    There is no statutory authority in 35 U.S.C. §32 for regulations intended to discipline a practitioner for "circumstances", but only for incompetence, disrepute, or gross misconduct.

6.    At Page 19, last line, Counsel states that "disbarment by a state is treated as a form of misconduct". Plaintiff can only ask, misconduct that Plaintiff did his best to prevent?

7.    At Page 20, last two lines, Counsel states that "the [disbarment] itself constitutes

6

the *substance* of the offense." (Emphasis added)  The statement contradicts the *Barron* and *Marzocco* cases discussed *supra*. And if so, why did Counsel and previous attorneys representing the USPTO in this matter devote so much effort in detailing a one-sided version of the conduct of Plaintiff on September 21, 1997?

8.    At Page 22, Counsel states that the 37 CFR §10.23 regulation implements the "shown to be disreputable" prong of the statute by provisions directed to "disreputable...misconduct".  But charging Plaintiff with misconduct requires charging the misconduct within the statute of limitations period, and all of Plaintiff's misconduct occurred more than five years prior to the USPTO initiating the Complaint against Plaintiff.

9.    At Page 23, lines 12-14, Counsel alleges that Plaintiff conceded that he was disreputable as a result of his being disbarred.  Plaintiff never admitted this, but only raised the hypothetical possibility that the USPTO could have drafted a "disreputable" regulation that allowed it to exclude practitioners who had been disbarred.  The fact is the USPTO did not draft such a regulation, and by repeatedly stating that it did so, as Counsel does at Page 23, lines 15-18, does not make it so.  Similarly, repeatedly deeming disbarment to be practitioner misconduct (or even practitioner conduct) does not make it so.

Plaintiff is not entirely convinced that being disbarred renders a practitioner disreputable as of the moment of disbarment, and that the disbarred attorney would not have been considered disreputable previously.  Firstly, Plaintiff doubts many considered President Clinton first became disreputable upon his disbarment by the Arkansas bar, and not when he lied before the Grand Jury regarding the Lewinsky affair, or his actual conduct with Ms. Lewinsky.  Secondly, hypothetically, if Plaintiff became disreputable upon being disbarred by the Maryland Bar in

December 2002 to start the Statute of Limitations clock anew, how could he become newly disreputable again to initiate the Statute of Limitations clock anew upon being disbarred by the District of Columbia Bar, on the same grounds as that in the Maryland Bar in March 2004? But the Complaint against Plaintiff included Plaintiff's D.C. disbarment, and if the USPTO interpretation of its regulations were that he was charged with being disreputable, then the USPTO must have considered that Plaintiff became newly disreputable when disbarred by D.C.

10.    At Page 23, lines 11-13, Counsel states that Plaintiff conceded that the disbarment rendered him disreputable, and the regulation is clearly authorized under that [shown to be disreputable] prong of the statute. Firstly, as discussed above, Plaintiff never made such an admission. Secondly, the interpretation made by Counsel is incorrect. If Counsel maintains otherwise, Counsel is challenged to identify the location of the precise language which is being attributed to Plaintiff. The regulation might allow for disciplining a practitioner for "disreputable misconduct", but it does not allow for disciplining a disreputable practitioner without the showing of misconduct (within the statutory period)on the part of the practitioner.

11.    At Page 24, lines 14-15, Counsel raises the imagined threat that if the USPTO is not permitted to exclude a disbarred practitioner, the practitioner may continue to "practice law" in the very jurisdiction that disbarred him. Not so. A disbarred attorney who is not excluded from the USPTO can represent others before the USPTO only as a patent agent. A patent agent does not practice law, authorized or unauthorized.

12.    At Page 24, lines 6-7, and again at Page 25, lines 1-2, Counsel states that permitting the USPTO to rely upon a state suspension or disbarment to discipline practitioners guilty of misconduct that might not be misconduct of a Disciplinary Rule of the USPTO has the

beneficial effect of protecting the public. This argument is disingenuous at best given the general provisions of 37 CFR §10.23. Be that as it may, Counsel has admitted that the USPTO regulation is discriminatory, since it would subject USPTO practitioners subject to state Bar discipline to be subject to discipline before the USPTO, while practitioners guilty of identical conduct who are not subject to state Bar discipline would not be subject to USPTO discipline. Not only that, given the interpretation the USPTO has given to 37 CFR §10.23(c)(5), the period that action can be brought against such a disciplined practitioner can be delayed until five years from his suspension or disbarment.

13.    At Page 25, lines 3-8, Counsel states that Plaintiff did not point to an authority requiring an agency to define the elements of a claim so as to trigger the Statute of Limitations provision 28 U.S.C. §2462. Plaintiff does not fully understand the point Counsel is making here, since it is crystal clear to Plaintiff as to the date the claim first accrued, by the very nature of the Complaint initiated against Plaintiff (for "practitioner misconduct") and the regulation under which he was charged, which is titled "Misconduct". And as Counsel admits at lines 5-6, the "questionable conduct" of Plaintiff occurred more than five years prior to the USPTO initiated the Complaint against him.

14.    At Page 25, lines 13-15, Counsel states that Plaintiff was charged with violating 37 CFR §10.23(c)(5) which provides for sanctions on the basis of disbarment. This is not correct, unless disbarment can be shown to be practitioner misconduct, and is also conduct within the statutory period.

15.    At Page 26, lines 4-6, Counsel misstates Plaintiff's position that Plaintiff had urged that the 37 CFR §10.23(c)(5) regulation was not a valid exercise of the USPTO's authority

under 35 U.S.C. §32. Plaintiff's position is that defining non-conduct to be conduct, as the USPTO has done in these proceedings, is improper.


A FINAL WORD

The USPTO in the present case maintains that the operative moment for the statute of limitations is the moment of disbarment by the state of Maryland, and the grounds for exclusion have nothing to do with the underlying misconduct of Plaintiff. Plaintiff has stipulated that he was disbarred for reasons of ethical misconduct, which misconduct occurred more than five years prior to the date of initiation of this action. As with previous attorneys representing the USPTO, Counsel chooses to devote several pages to outlining the nature of the misconduct. Since the nature of the misconduct can have nothing relevant to do with the outcome of this case, the description could only have been added to prejudice the Plaintiff in the eyes of the court. Although Plaintiff's explanation was not accepted by the Maryland court, Plaintiff has maintained from the very beginning that he sent his son to Israel, not to escape justice, but so that his grandmother, who lived there and was one of the few people who had any effective good influence over him, might have the opportunity to prevent him from committing suicide as threatened. This was not an empty threat, as seen from the fact that his son did attempt suicide soon after arriving in Israel and that his co-defendant committed suicide while in the custody of the state of Maryland. Despite the fact that the Maryland court did not believe this explanation for reasons of its own, Plaintiff still maintains (and knows) that it is true. It is for this reason that he does not hesitate to use the statute of limitations in an attempt to avoid what to him is an unjust result of his actions. But his son did not commit suicide and is alive, serving the longest

jail sentence a minor has received in Israel, and if exclusion from practice before the USPTO is the price Plaintiff must pay for that, assuming that this court's decision goes against him, most parents would pay it as the price for preventing the suicide of a son.


CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment of Affirmance should be denied, the Final Decision of the USPTO should be reversed and the USPTO be ordered to reinstate Plaintiff to the rolls of eligible patent agent practitioners.


Respectfully submitted,

Dated: September 30, 2005                    By:  _____

                                                  Sol Sheinbein, *pro se*
                                                  c/o Castorina
                                                  310 Shadow Walk
                                                  Falls Church, Virginia 22046
                                                  (703) 534-0673

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

SOL SHEINBEIN                 )
                                     )
                                     )
           PLAINTIFF              )
                                       )
           V                     )
                                       )       **CIVIL ACTION NO. 05-1460**
JON DUDAS                     )             **(ESH)**
Director, U.S. Patent & Trademark Office   )
                                       )
                                       )
           DEFENDANT         )

## ORDER

Defendant's (Respondent's) Motion for Judgment of Affirmance is denied, Plaintiff's Motion for Summary Judgment is granted. Plaintiff Petition to be reinstated as a practitioner is been granted, and the agency decision to exclude him is hereby reversed and vacated.

ORDERED, that Defendant reinstate Plaintiff, retroactively as of the date of his exclusion, to the rolls as a patent agent eligible to practice before the U.S. Patent and Trademark Office, and publish this decision and Order in the Official Gazette of the U.S. Patent and Trademark Office.

Date: _____                _____
                                            JUDGE