## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SOL SHEINBEIN | ) | |
| | ) | |
| | ) | |
| PLAINTIFF | ) | |
| | ) | |
| V | ) | |
| | ) | **CIVIL ACTION NO. 05-1460** |
| JON DUDAS | ) | **(ESH)** |
| Director, U.S. Patent & Trademark Office | ) | |
| | ) | |
| | ) | |
| DEFENDANT | ) | |

## MOTION FOR SUMMARY JUDGMENT

Plaintiff, Sol Sheinbein, moves for Summary Judgment in this case to reverse the Final

Decision (hereinafter "Final Decision") of the Under Secretary of Commerce for Intellectual

Property and Director of the U.S. Patent and Trademark Office ("USPTO") Jon Dudas dated May

5, 2005 excluding Plaintiff from practicing before the USPTO. Based upon the pleadings and

record of this proceeding, there is no genuine issue as to material fact. Therefore, summary

judgment is appropriate to resolve the remaining legal issues.

Plaintiff committed conduct on September 21, 1997, which, for the purposes of this

matter, is admittedly misconduct. The USPTO initiated proceedings to exclude Plaintiff from

practicing before the USPTO by the filing of a Complaint on March 11, 2004, almost six and a

half years after the commission of the misconduct. The exclusion of Plaintiff was improper since

the five-year statutory period prescribed by 28 U.S.C. §2462 had expired before any USPTO

Complaint was made.

Accordingly, Plaintiff requests an Order reinstating him to practice before the USPTO.

Respectfully submitted,

Dated: September 30, 2005                    By:  _____

Sol Sheinbein, *pro se*
c/o Castorina
310 Shadow Walk
Falls Church, Virginia 22046
(703) 534-0673

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SOL SHEINBEIN | ) | |
| | ) | |
| | ) | |
| PLAINTIFF | ) | |
| | ) | |
| V | ) | |
| | ) | **CIVIL ACTION NO. 05-1460** |
| JON DUDAS | ) | **(ESH)** |
| Director, U.S. Patent & Trademark Office | ) | |
| | ) | |
| | ) | |
| DEFENDANT | ) | |

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Based upon the undisputed material facts in the case, Plaintiff Sol Sheinbein, is entitled to a judgment as a matter of law.  There is no genuine issue of material fact precluding this Honorable Court from rendering a decision on the Motions filed by the parties.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      On September 21, 1997 Plaintiff sent his son to Israel, when he knew that the authorities wanted to question his son in connection with a murder[1]. This *was Plaintiff's* conduct.

2.      The USPTO was aware of Plaintiff's conduct since the date of his conduct. The OED Director's Reply To Respondent's Appeal to the Commissioner under 37 CFR §10.155

---

[1] The reason Plaintiff sent him to Israel was to prevent his committing suicide and give him an opportunity to cool off. The dissenting opinions filed by two Maryland Court of Appeals judges in the Order disbarring Plaintiff provide cogent reasons why Plaintiff's conduct was not so egregious so as to require discipline.

dated February 7, 2005, states at Page 23, [Administrative Record ("A.R.") 1843, " [Plaintiff's]

misconduct, ....was virtually impossible to miss because it was highly publicized in the news

media in real time." long before Plaintiff was disbarred.  An example of a newspaper clipping,

A.R. 1712, relating to Plaintiff's conduct dated prior to September 2002, from the Administrative

File maintained by the USPTO Office of Enrollment and Discipline (OED) further attest to that.

   3.     The USPTO could have initiated proceedings to discipline Plaintiff based on the

above conduct until September 21, 2002.

   4.     On September 22, 2002, the five-year statutory period prescribed by 28 U.S.C.

§2462 to discipline Plaintiff based on his misconduct expired.

   5.     The USPTO had not initiated any disciplinary proceedings against Plaintiff when

the Statute of Limitations period expired on September 22, 2002.

   6.     From September 22, 2002 through December 15, 2002, the Plainitiff was not

subject to any disciplinary proceedings in the USPTO.

   7.     On December 16, 2002, Plaintiff was disbarred from law practice in Maryland by

the Court of Appeals of Maryland for the above conduct.

   8.     The Maryland disbarment constitutes a disbarment on ethical grounds.

   9.     The District of Columbia initiated Disciplinary proceedings against Plaintiff in

February 2000, but stayed further action in the matter pending a decision by the State of Maryland.

After the Maryland decision disbarring Plaintiff, the Court of Appeals for the District of Columbia

suspended Plaintiff from practicing law in the District of Columbia Bar on February 6, 2003.  On

March 11, 2004, Plaintiff was disbarred from the Court of Appeals for the District of Columbia.

   10.    The District of Columbia disbarment constitutes a disbarment on ethical grounds.

2

11.    On March 4, 2004, the USPTO Director of Office of Enrollment and Discipline ("OED") filed a Complaint Under 35 U.S.C. §32 (hereinafter "Complaint"), and an Amended Complaint (hereinafter "Amended Complaint") on March 31, 2004, asking for Plaintiff's exclusion from practice before the USPTO. The proceeding was numbered Disciplinary Proceeding D03-14.

12.    The Complaint and Amended Complaint asked for Plaintiff's exclusion from practice before the USPTO solely on the basis that he violated 37 CFR §10.23(c)(5) in that Plaintiff was disbarred from practice as an attorney by duly constituted authorities of Maryland and the District of Columbia on ethical grounds.

13.    By decisions dated September 7, 2004 ("Order on Cross-Motions for Summary Judgment") and December 10, 2004 ("Initial Decision of Administrative Law Judge") Administrative Law Judge Moran dismissed arguments asserted by Plaintiff and recommended that Plaintiff be excluded from practicing before the USPTO.

14.    The Under Secretary of Commerce for Intellectual Property and Director of the USPTO affirmed the exclusion of Plaintiff in a Final Decision Under 37 CFR §10.156 in an opinion dated May 5, 2005. A Request for Reconsideration of the Final Decision was denied on June 23, 2005.

15.    By his decision of May 5, 2005, Defendant held that Plaintiff violated 37 CFR §10.23 by being disbarred from practice as an attorney by the State of Maryland and the District of Columbia on ethical grounds, in violation of USPTO Disciplinary Rule (DR) 10.23(c)(5), and that such disbarment was "deemed violative conduct".

## STATUTORY AUTHORITY TO DISCIPLINE PRACTIONERS

### USPTO Statutes

The relevant part of the statutory authority granted the Director to initiate and conduct

Disciplinary proceedings is found in 35 U.S.C. §32, *Suspension or Exclusion From Practice*:

> The **Director may**, after notice and opportunity for a hearing, suspend or **exclude**, either generally or in any particular case, **from further practice before the Patent and Trademark Office**, any person, agent, or attorney **shown to be incompetent or disreputable, or guilty of gross misconduct** or who does not comply with the regulations established under Section 2(b)(2)(D) of this title....(Emphasis added)

The relevant part of 35 U.S.C. § 2(b)(2)(D) reads, as follows:

> 35 U.S.C. § 2 *Powers and duties*
> (b) Specific Powers. -
> The Office -
> (2) may establish regulations, **not inconsistent with law**, which -
> (D) may **govern** the recognition and **conduct** of agents, attorneys, or other persons representing applicants or other parties before the Office... (Emphasis added)

### Statute of Limitation

The above USPTO authority to discipline practitioners is subject to the Statute of Limitations

encoded at 28 U.S.C. §2462. Section 2462 provides in relevant part,

> an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless **commenced within five years** from the date when the claim first accrued...

The USPTO agrees that Plaintiff's conduct of September 21, 1997 was not a valid basis

for Disciplinary proceedings initiated in 2004, since the five-year statutory period prescribed by 28

U.S.C. §2462 had expired before any USPTO Complaint was made. See Page 10, line 15 through

Page 11, line 9 of Complainant's Brief in Support of Director's Motion for Summary Judgment filed

July 16, 2004, A.R. **1553-1554,** where the USPTO wrote:

The U.S. Court of Appeals for the District of Columbia Circuit has determined that the five-year limitation in §2462 applies to all administrative proceedings initiated by the federal government for the purpose of enforcing *or imposing* a penalty. 3M Company v. Browner, 17 F.3d 1453 (D.C. Cir. 1994). The Court has included within the definition of "penalty" under 2462 the revocation or suspension of a professional license by a federal agency. Johnson v. Securities and Exchange Comm'n, 87 F.3d, 484, 488-89 (D.C.Cir. 1996). Moreover, although 2462 does not discuss the USPTO **the Director agrees that the five-year default statute of limitations applies to the agency in this type of proceedings and thus, the Director does not file complaints against respondents based on claims that are over five years old. Chief Judge Biro of this Tribunal recently found that the disbarment or suspension of a USPTO practitioner under 37 CFR §10 is a "penalty" for the purposes of 2462 and that any disciplinary proceeding seeking such disbarment or suspension is subject to 2462's five-year period of limitations** Moatz v. Kroll, Proceeding No. D03-09 (Order (p. 4) October 15, 2003); see also Moatz v. Kersey, Proceeding No. 00-07, 2002 WL 32056608 (Comm'r 2002). (Emphasis added).

USPTO Regulations

Pursuant to its authority to draft regulations, the USPTO issued regulations to implement the above statutory authorities to govern and discipline practitioners.

Under 37 CFR §10.134, Complaint, Section (a),

"[a] **complaint instituting a disciplinary proceeding shall**....(2) [g]ive a plain and concise description of the alleged **violations** of the Disciplinary Rules by the practitioner." (Emphasis added).

This rule thus provides the "notice" required by 35 U.S.C. §32.

Disciplinary Rules are defined in 37 CFR §10.20, Section (b), as follows:

"Disciplinary Rules [which include Section 10.23] are mandatory in character and state the minimum level of ***conduct*** *below which no* ***practitioner*** *can fall* without being subjected to disciplinary action." (Emphasis added).

The Complaint and Amended Complaint filed against Plaintiff charged Plaintiff, as required, with a violation of a Disciplinary Rule. Specifically, it accused Plaintiff of being in violation of 37 CFR §10.23, entitled *Misconduct*. More specifically, it accused Plaintiff of being in

5

violation of 37 CFR §10.23(c)(5).

The pertinent portions of 37 CFR §10.23(c)(5) follows:

§ 10.23 **Misconduct**.

(a) **A practitioner** shall not *engage* in *disreputable or gross **misconduct***.

(b) A **practitioner** shall not:

(1) *Violate* a Disciplinary Rule.

(2) *Circumvent* a Disciplinary Rule through actions of another.

(3) *Engage* in illegal *conduct* involving moral turpitude.

(4) *Engage in conduct* involving dishonesty, fraud, deceit, or misrepresentation.

(5) *Engage in conduct* that is prejudicial to the administration of justice.

(6) *Engage in any other conduct* that adversely reflects on the practitioner's fitness to practice before the Office.

(c) ***Conduct* which constitutes a violation of paragraphs (a) and (b)** of this section *includes*, but is not limited to:

. . .

(5) Suspension or disbarment from practice as an attorney or agent on ethical grounds by any duly constituted authority of a State or the United States…(Emphasis added)

. . .

Definition of Misconduct

Black's Law Dictionary, *Fourth Edition* (1957) defines "*conduct*" as follows: "Personal behavior; deportment; mode of action; any positive or negative act. Kelly v. State, 151 Md. 87, 133 A. 899, 904; Lamborn v. New York Cotton Exch., 197 N.Y.S. 57, 60, 203 App.Div. 565."

"*Misconduct*" is defined therein as "a transgression of some established and definite rule of action, a forbidden act, a dereliction from duty, unlawful behavior, willful in character, improper or

wrong behavior; its synonyms are misdemeanor, misdeed, misbehavior, delinquency, impropriety, mismanagement, offense, but not negligence or carelessness. Mandella v. Mariano, 61 R.I. 163, 200 A. 478, 479."

"Act" is defined as "something done *voluntarily* by a person; the exercise of an individual's power"; denotes affirmative; expression of will; idea of performance

Other definitions of the word "conduct" are similar: "Personal behavior", "to comport oneself" "personal deportment" "behavior", "mode of action", "conduct oneself", "behave in a certain way".

No definition of the words "conduct", "misconduct", "act" or "behavior" can make a decision of a State authority to disbar or suspend Plaintiff into *practitioner conduct* since there is no conduct, behavior or act of *practitioner* in the making of that decision.

On the contrary, Plaintiff vigorously opposed the act eventually taken by the state authorities to revoke Plaintiff's law license. To now attribute the actions taken by the State authorities to disbar Plaintiff and thus make the State action the "voluntary" conduct of Plaintiff, renders a mockery of the English language and creates a Kafkaesque atmosphere.

THE ISSUE BEFORE THE COURT

Plaintiff is of the opinion that this Honorable Court needs to decide only one issue:

Is Plaintiff's disbarment from practice by Maryland and the District of Columbia properly deemed to be conduct of Plaintiff?

If it is not, Defendant's exclusion of Plaintiff was improper because it was barred by the Statute of Limitations.

Plaintiff urges that Plaintiff's disbarment is not Plaintiff's conduct and will show that

Defendant's interpretation of this regulation is clearly erroneous, has been applied inconsistently and is inconsistent with the regulation and law.

## ARGUMENTS

### Defendant's Complaint Charged Plaintiff With Misconduct, Not For Being Disreputable

In the Final Decision excluding Plaintiff, Defendant went to great lengths to justify 37 CFR §10.23(c)(5) as authorized under the "disreputable" provision of 35 U.S.C. 32. See Pages 11-14 of the Final Decision. At Page 12 of the Decision, A.R. 1860, Defendant states that the "loss of repute" Plaintiff first incurred was when Plaintiff was disbarred, and not when he committed the allegedly disreputable acts. The allegedly disreputable acts were, as admitted by the USPTO, highly publicized in real time, but that apparently, in the USPTO's view, does not cause disrepute.

Plaintiff reminds the Court that the Complaint brought against Plaintiff requires, pursuant to 37 CFR §10.134 and 37 CFR §10.20 a showing of practitioner misconduct before any disciplinary action can be taken against Plaintiff. In fact, Plaintiff was charged with violation of 37 CFR §10.23, which cannot be more explicit in requiring a showing of practitioner misconduct.

The USPTO did not draft any regulations that address the disrepute of a practitioner (as opposed to disreputable conduct). A search of the 37 CFR §10 regulations located only two instances where "disreputable" is mentioned. In the first instance, it may be found in 37 CFR §10.130, where the 35 U.S.C. §32 statute is essentially repeated, other than that the term "violates a Disciplinary Rule" replaces the language "does not comply with regulations established under section 2(b)(2)(D)".

The other instance is in the aforementioned 37 CFR §10.23(a) Misconduct section ("A

practitioner shall not engage in *disreputable or gross misconduct*" (emphasis added)) that Plaintiff is allegedly deemed to have violated.

Before Chapter 10 of 37 CFR was adopted in 1985, it was published in the Federal Register for comments. A commentator to this proposed Section requested a definition of the term "disreputable" and "gross misconduct", for which see Federal Register, Volume 50, No. 25 (February 6, 1985), page 5163, Column 1 (50 FR 5163). The response given there by the USPTO was as follows:

> The terms "disreputable" and "gross misconduct" appear in 35 U.S.C. 32 and need no further definition in the rules. For a discussion of "disreputable" see *Poole v United States*, 54 A.F.T.R. 2d (P-H) 84-5536 [sic] [5530][D.D.C., June 29, 1984] (See 739 F. 2d 949).

In the *Poole* case, the Court held that it

> "...is simply not the case that ......disreputable refers solely to a general loss of reputation.....With respect to attorneys or other agents, 'disreputable' conduct has generally included 'unprofessional' conduct and .....was well understood to include 'any conduct violative of the ordinary standard of professional obligations and honor.' Garfield v. United States ex rel. Stevens, 32 App. D.C. 109, 140 (1908)"

The presently proposed interpretation is in direct contradiction to the *Poole* case above that the USPTO itself cited for the definition of "disreputable".

Contrary to Defendant's interpretation of the term, even if being disbarred renders the disbarred practitioner "disreputable", it is clear from the above *Poole* definition of disreputable, the practitioner would have become disreputable when he committed the disreputable conduct. If so, it was Plaintiff's alleged disreputable conduct that led to Plaintiff's disbarment that rendered Plaintiff disreputable. As admitted by the USPTO, this conduct, committed in 1997, is barred by the Statute of Limitations encoded at 28 U.S.C. §2462 from being pursued in a disciplinary proceeding by the

9

USPTO.

Moreover, Defendant's interpretation of "disreputable" results in an internal contradiction in holding that Plaintiff violated 37 CFR §10.23 upon being disbarred on ethical grounds by the State of Maryland **and** the District of Columbia. If Plaintiff had already been deemed disreputable by being disbarred in Maryland on ethical grounds on December 16, 2002, how could Plaintiff become disreputable again on March 11, 2004, by being disbarred by the District of Columbia on March 11, 2004 on the same ethical grounds? (Plaintiff's suspension by the District of Columbia on February 6, 2003, overlooked by the Defendant, would, under that interpretation, be another instance of Plaintiff becoming "disreputable" and render Defendant's interpretation even more problematic). The Amended Complaint filed by the USPTO included Plaintiff's D.C. disbarment (initiating a new date when the claim arose for the purposes of calculating the Statute of Limitations), and if the USPTO interpretation of its regulations were that Plaintiff was charged with being disreputable, then the USPTO must have considered that Plaintiff became newly disreputable when disbarred by the District of Columbia.

Clearly, the Defendant's interpretation of "disreputable" is wanting, and the proper interpretation is that given it in the *Poole* case. Such a correct interpretation results in defining the moment that Plaintiff committed the disreputable conduct as the time the claim accrued. As such, even Plaintiff's alleged disrepute is barred by 28 U.S.C. §2462 as a basis for exclusion. The above attempt by Defendant to base the action against Plaintiff on his being "disreputable" results in the same outcome, i.e., the action is barred by the Statute of Limitations,

Plaintiff has little doubt that the USPTO could have drafted a valid regulation under its authority granted in 35 U.S.C. §32 which would allow exclusion from practice of a practitioner

10

solely on the grounds that the USPTO finds the practitioner to be disreputable. The USPTO did not do so, and based on the above analysis of *Poole*, it did not intend to do so. Disreputability, absent conduct, was not considered and could not have been intended by the USPTO when it cited the *Poole* case to provide a definition of disreputable. No such regulation exists, and even if it did exist, it is not the regulation under which the Plaintiff was charged.

Plaintiff was not accused of being disreputable in the Complaint that initiated the instant disciplinary proceedings, and as 37 CFR §10.134 clearly states, the reasons for such suspension or exclusion must be plainly given in the Complaint. The regulation under which Plaintiff was charged requires, among other possibilities, disreputable misconduct.

Defendant has made a valiant attempt to isolate the specific language of sub-sub-section (5) ("Suspension or disbarment from practice as an attorney or agent on ethical grounds by any duly constituted authority of a State or the United States") from sub-section (c) ("**Conduct** which constitutes a violation of paragraphs (a) and (b) of this section includes") which references sub-sections (a) ("A **practitioner** shall not engage in disreputable or gross **misconduct**") and subsection (b) (A **practitioner** shall not...") of section 10.23, **Misconduct**, in order to divert the Court's attention from the fact that it must find actual ~~practitioner misconduct within the period allowed by the Statute of Limitations~~ in order to sustain Defendant.

The regulation which the USPTO chose to enact defined misconduct as the operative link to the 35 U.S.C. §32 statute and placed disbarment as a subcategory of misconduct. That being the case, the statute of limitations for USPTO actions begins running with the misconduct, and _not_ with any subsequent state disbarment (which is not conduct of a practitioner), and not with becoming disreputable.

11

As set forth in the USPTO regulations, disbarment based on ethical grounds provides proof of misconduct. Disbarment is an example of something that could be used to prove that there had been the type of conduct constituting the sole requirement, "misconduct." The accrual date for that was not when Plaintiff was disbarred, but it arose when the facts giving rise to the cause of action for the unethical conduct arose.

Due Process

Due process requires that Plaintiff be informed of the charges against him so that he can answer them. The USPTO did inform Plaintiff of the charges. By its very nature, the Complaint charges the practitioner with misconduct by the practitioner, see 37 CFR §10.134 and 37 CFR §10.20, *supra.*

The USPTO charged Plaintiff with a violation of a subsection of Section 10.23, *Misconduct [of a practitioner].* The charges which were the subject of the Complaint against Plaintiff bear no relationship to questions of disreputability, but only to the conduct of Plaintiff. Plaintiff had no reason to answer any charges other than for Plaintiff's misconduct.

The preamble of Section 10.23(c) reads "*Conduct* which constitutes a violation of paragraphs (a) and (b) of this section includes but is not limited to" followed by 20 examples, including 10.23(c)(5) which formed the basis for the charge against Plaintiff.

Since misconduct is required before anything in 37 CFR §10.23 can be brought into play, it is not unreasonable that Plaintiff contends that Section §10.23, which forms the basis of the only charge against Plaintiff as embodied in §10.23(c)(5), permits disciplining practitioners only for their misconduct. The specific charge brought against Plaintiff has this limitation. In fact, as discussed above, all disciplinary proceedings that are initiated by a Complaint must include

12

misconduct, pursuant to 37 CFR §10.134(a) and 37 CFR §10.20(b).

To decide now to exclude Plaintiff on the grounds that Plaintiff was disreputable by originating those grounds *sua sponte*, and by then deciding them without giving Plaintiff an opportunity to defend against them is clearly a violation of due process. However, it is not the office of the Defendant's deciding official for the Final Decision to make charges, but only to decide those charges which have actually been brought before him.

In an attempt to provide "lip service" to his quandary, Defendant, after dedicating almost the complete Decision to discussing Plaintiff's conduct of September 21, 1997, and Plaintiff being disreputable, does state that the act of disbarment of Plaintiff is "deemed violative conduct", slipping it in at Page 12, lines 1-3 of the Final Decision.

The Proper Reading of 37 CFR §10.23

Plaintiff contends that Plaintiff's suspension and disbarments from practice as an attorney by Maryland and the District of Columbia are *not* instances of *Plaintiff's misconduct*, but rather are acts of ministerial bodies having authority to discipline an attorney. To urge that Plaintiff has committed misconduct for having been disbarred, when he did everything he could to prevent the disbarment, and the disbarment is not his conduct, adds insult to injury.

In an effort to interpret the regulation in such a way that it would be consistent, logical and reasonable, Plaintiff suggests that the following analysis is proper:

Clearly, some words are missing in Section 10.23(c)(5) to make this Section logically follow the preface (c), "[c]onduct [of a practitioner]". Such missing words, grammatically called an "ellipsis", are apparently the words "Conduct which results in" to be inserted at the beginning of

13

Section 10.23 (c)(5).

Plaintiff would like to offer a simple argument – the USPTO Disciplinary Rules require that the practitioner to be excluded from practice must be guilty of misconduct, which means that the practitioner must have committed whatever conduct he is to be found guilty of. 37 CFR §10.23 is entitled *Misconduct*. 37 CFR §10.23 (c) specifies examples of *conduct of a practitioner* which constitute a violation of the previous paragraphs (a) and (b). 37 CFR §10.23 (c) (5) lists "Suspension or disbarment from practice as an attorney or agent on ethical grounds by any duly constituted authority of a State or the United States". Suspension or disbarment by a "duly constituted authority" is *not conduct of a practioner*, but is an act of the duly constituted authority. Only the *conduct of the practitioner* resulting in the disbarment can reasonably be considered conduct of the practitioner. While such *suspension or disbarment* by authorized bodies may be a logical result of acts of misconduct of an practitioner, and may be evidence of or support conclusions of misconduct, they are *not, per se, "conduct of a practitioner"*.

On December 12, 2003, the USPTO published proposed revisions of the regulations relating to Disciplinary Proceedings in the Federal Register, 68 F.R. 69442. At Page 69534, in a proposed Section §11.24 (c), relating to disciplining USPTO practitioners based on their having been suspended or disbarred in another jurisdiction, the proposed Rule recites, *inter alia*,

> [A] final adjudication in a disciplinary court shall establish conclusively **the misconduct** clearly disclosed on the face of the record upon which the discipline is predicated. A certified copy of the record of suspension, disbarment, or resignation shall be conclusive evidence of the commission of professional misconduct in any reciprocal disciplinary proceeding. (Emphasis added).

Thus, by the suggested USPTO definition, the misconduct being disciplined is the conduct of the practitioner, himself or herself, and **not** the "misconduct" of the practitioner for having been

disbarred.

Therefore, the proper reading of Section 10.23(c)(5) to maintain a consistency in these regulations must be that this section includes in an ellipsis a phrase such as "[C]onduct which results in" before the term "Suspension or disbarment...." in this clause. Reading these clauses in a vacuum without the ellipsis language "[C]onduct which results in" in the beginning thereof would create a contradiction, which would have to be inconsistent with the intent of the USPTO regulations.

Any misconduct of Plaintiff occurred more than five years before the Complaint which initiated this action was filed, and such misconduct is thus not subject to USPTO Disciplinary action, since such action is barred by the Statute of Limitations. Since it is agreed by all parties that *the practitioner conduct* which led to Plaintiff's disbarment occurred outside the statute of limitations, action by the "duly constituted authority" cannot be converted into Plaintiff's conduct to bring the conduct within the statutory period.

For the above reasons, a disbarment or suspension by a State Bar does not create a separate ground for disciplining an attorney, but it is the conduct that leads to such disbarment or suspension that provides grounds for discipline. The USPTO's own proposed regulation at 68 FR 69442, cited above, appears to support this interpretation. Thus, no new starting date is created for determining the Statute of Limitations cut-off date.

An Agency's Interpretation Of Its Regulations Cannot Be Accepted If Erroneous Or Inconsistent

The Final Decision held that an agency's interpretation of its own regulations is entitled to substantial deference, and that interpretation will be accepted unless it is plainly erroneous or

inconsistent with the regulation. After paying lip service to this recognized and accepted doctrine, the Defendant fails to address any of the points made by Plaintiff proving that the USPTO interpretation is erroneous and inconsistent with the regulations, and that the USPTO interpretation has been "manifestly unreasonable".

Under the Defendant's conclusion, regulations drafted in 1985, ten years before a court in *Johnson v. SEC* first declared that the five-year Statute of Limitations applies to these types of cases, become unchallengeable even if the regulations are contrary to law as later declared. When the regulations were drafted, any interpretation of 37 CFR §10.23(c)(5) would result in the identical outcome, whether or not the ellipsis were read into it, since the five-year Statute of Limitations was not then known to be applicable to USPTO disciplinary proceedings. Since the 1996 *Johnson* case, the Statute of Limitations has been known to be applicable to these proceedings, and interpreting the regulation correctly as Plaintiff has done results in a completely different outcome from the improper interpretation given it by the Defendant.

The authority given the USPTO to establish regulations that govern the conduct of practitioners under 35 U.S.C. §2(b)(2)(D), requires that they be "**not inconsistent with law**". Interpreting a regulation in a manner such that it circumvents the Statute of Limitations, as the Defendant has done, makes the regulation inconsistent with 28 U.S.C. §2462.

It should also be noted that an agency which has issued several contradictory interpretations of the same regulation is not entitled to much deference when it chooses which interpretation to maintain and which interpretation to ignore. In 50 FR 5163, cited above, the USPTO maintained that "disreputable" did not stand alone, but included the violative conduct which brought disrepute. The current interpretation seems to be that loss of repute occurs as a result of being disbarred, and that

actual practitioner conduct by Plaintiff is apparently unnecessary.

In fact, the USPTO interpretation of the 37 CFR §10.23(c)(5) regulation throughout these proceedings has not been a reasonable one entitled to deference. It has been "manifestly unreasonable", and not entitled to any weight. To urge that Plaintiff has committed misconduct for having been disbarred, when he did everything he could to prevent the disbarment, and the disbarment is not his conduct, adds insult to injury.

The fact is that the USPTO had consistently interpreted this regulation differently, and looked at the conduct that led to the disbarment as the basis for the discipline, and not at the disbarment itself. See *In the Matter of Ralph L. Marzocco*, Proceeding No. D00-04 (A.R. 66-69) and *Bovard v. Barron*, Proceeding No. D99-02 (A.R. 70-77).

In both the *Barron* case and the *Marzocco* case, the practitioner was disbarred on ethical grounds from a state bar for professional misconduct. In neither case did the practitioner respond to the USPTO complaint before the ALJ. In both cases, the ALJ found that it could not exclude the practitioner from practice before the USPTO because no record had been developed respecting all of the circumstances surrounding the professional misconduct, and so all it could do at that point was to provide an indeterminate suspension, allowing the practitioner to provide a later explanation for the misconduct. The ALJ recommended such a result to the USPTO in both cases, and the USPTO apparently accepted the recommendations in disposing of these cases.

This makes it clear that the USPTO, in interpreting its regulations prior to the present case, has considered the state disbarment as an indication or proof of the professional misconduct, but unless it could prove the type of professional misconduct, the USPTO could not resolve the matter

17

by permanently excluding the practitioners.  Mere disbarment was not considered sufficient proof of misconduct for permanent exclusion.

In the present case, the USPTO has reinterpreted its own regulations so that the type or time of the misconduct is not relevant, so long as there has been state disbarment.  State disbarment in the present case is assumed to be sufficient to exclude a practitioner permanently from practice.  But if that were the USPTO traditional interpretation of its regulations, it would have been sufficient in the *Barron* and *Marzocco* cases to prove the disbarment, and the type of professional misconduct would not have been relevant.

Not surprisingly, the Defendant has now (September 23, 2005) come up with a completely novel interpretation of this regulation, namely that "the [disbarment] decision constitutes the *substance* of the offense" (emphasis added), see Respondent's Motion for Judgment of Affirmance, Page 20, last line.  That clearly clarifies the matter and explains the USPTO position, sarcasm intended.

If the USPTO is to be allowed to make illogical interpretations of its own regulations, it should at least be required to be consistent and to interpret the regulations the same illogical way every time.  It should not be allowed to generate a new and inconsistent interpretation of its regulations, contrary to its earlier interpretation, to meet each new situation.

In summary, any disciplinary action against Plaintiff should only be allowed to be brought against Plaintiff within five-years of Plaintiff's conduct.

*The conduct of the state in disbarring Plaintiff is not practitioner conduct.*

As far as Plaintiff is aware, there has never been a previous case decided in which the question of whether or not the ellipsis language applies would not have been moot.  This is because

the question of whether exclusion could be based on misconduct (which led to disbarment), which misconduct occurred more than five years before the Complaint was made, has never been argued in a reported decision.

During the course of Plaintiff's disciplinary proceedings in the USPTO, the USPTO urged that USPTO registered attorneys have been suspended or excluded based on the above 37 CFR §10.23(c)(5) regulation, citing several internal USPTO Decisions, all of which were either default cases or settlements.

Plaintiff does not see the relevance of these Decisions since none of these Decisions addressed the argument first made by Plaintiff, that discipline based on disbarment within the five-year period is barred by the Statute of Limitations period if the practitioner conduct occurred outside the five-year period. There is thus no known previous agency interpretation of its regulations relating to state disbarment and resulting exclusion from USPTO practice when the underlying conduct occurred outside the period established by the Statute of Limitations.

While it may be true that long-standing regulations are to be given much credence, it is also true that where one reading of a regulation falls within the allowable scope of a statute and another reading does not, the regulation has to be given the reading that makes the regulation statutory in order for it to have that credence. Where the regulation states that being disbarred is misconduct, the only interpretation which should be allowable would require misconduct by the practitioner. To do otherwise is to change the meaning of the regulation (which requires misconduct) long after the regulation was promulgated and approved. Since an accusation of misconduct is required to tell the practitioner what the charges against him or her are, an interpretation that states that

19

misconduct within the statute of limitations period is not required in order to constitute misconduct is clearly erroneous and fails to give adequate notice to the practitioner of the charges against him.

Interpreting 37 CFR §10.23(c)(5) in a manner the Defendant has done also results in unfair discrimination against practitioners otherwise subject to disbarment proceedings as compared to those not subject to disbarment proceedings, since such an improper interpretation of the regulation results in the disbarment date becoming the date the claim first accrued, which may result, as it has in the instant case, in the USPTO being able to bring a Complaint against Plaintiff, while such a Complaint could not have been made had Plaintiff not been subject to State disbarment proceedings, since an action based on conduct based on the September 21, 1997 conduct would have been barred by the Statute of Limitations.

<u>The Statute of Limitations</u>

The reason for a Statute of Limitations clause is to bring closure and certainty to an action.

The USPTO took no action against Plaintiff until the five-year Statute of Limitations expired with respect to Plaintiff's conduct. There is no provision in the patent statute under 35 U.S.C. § 32 that would toll the five-year statute of limitation of 28 U.S.C. § 2462 pending the outcome of any State disbarment proceeding. The disciplinary action by the Maryland Bar does not toll the statute of limitations set forth in 28 U.S.C. § 2462. While the action by the Maryland Bar was initiated in September 1999, and that initiated by the D.C. Bar was in 2000, waiting for a final decision in the Maryland proceedings does not toll the statutory period. A decision regarding any disciplinary action against Plaintiff by the Maryland Bar was not a condition precedent that had to be fulfilled before the USPTO could bring its Complaint, nor was a final administrative order

assessing penalty a requirement that had to be fulfilled.

Defendant asserts in the Final Decision "that requiring the USPTO to proceed [in bringing a Complaint] before state bar proceedings are complete would work to the detriment of accused practitioners who would have to defend dual actions simultaneously." Final Decision, Page 13. A.R. 1861.

This attempt by Defendant to ask the Court to ignore the clear provisions of the Statute of Limitations, 28 U.S.C. §2462, because Defendant was doing Plaintiff a favor, should be dismissed out of hand. Defendant never approached Plaintiff to ask if Plaintiff was interested in a delay in the initiation of a Complaint. Moreover, there was nothing to prevent Defendant from bringing the Complaint before the Statute of Limitations expired, and staying the proceedings pending the resolution of the Maryland disbarment proceedings. This is exactly what the District of Columbia bar did, and they were not constrained by a Statute of Limitations deadline, as was the USPTO.

Plaintiff and Defendant are in agreement that in the eighty-five (85) day period between September 22, 2002, when the statute of limitations on Plaintiff's September 21, 1997, conduct had expired, and December 15, 2002, just before Maryland disbarred Plaintiff, Plaintiff was not subject to any disciplinary action by the USPTO.

Defendant now postulates that Defendant acquired a new ground to exclude Plaintiff based on Plaintiff's being disbarred on December 16, 2002. Defendant also postulates that the new ground is based on Plaintiff's conduct of September 21, 1997, but does not rely on that conduct, since that conduct cannot be disciplined directly because such discipline is barred by the Statute of Limitations. This argument ranks right up there with transubstantiation in its miraculous qualities.

Under the determination reached by the Defendant, Plaintiff has committed misconduct no

less than five times:

1.  On September 21, 1997, when Plaintiff committed questionable conduct;

2.  On December 16, 2002, when Plaintiff was disbarred in Maryland;

3.  On February 6, 2003, when Plaintiff was suspended by the District of Columbia bar;

4.  On March 11, 2004, when Plaintiff was disbarred by the District of Columbia bar; and

5.  On June 23, 2005, when Plaintiff was excluded from practicing before the USPTO.

Had Plaintiff been registered before other bar associations and courts and had Plaintiff been disbarred therefrom, Plaintiff would have accumulated even more USPTO defined misconduct violations, all generating their own date of when the claim for that misconduct first accrued. Discipline for these violations would be based on Plaintiff's conduct of September 21, 1997, despite the fact that disciplining Plaintiff for that conduct is barred by the Statute of Limitations. Assuming, as stipulated for this case, that Plaintiff committed misconduct on September 21, 1997, there is no suggestion that Plaintiff has committed any further misconduct since that date.

If the position of the USPTO is upheld, the Court would, as a practical matter, give the USPTO the power to determine when the Statute of Limitations will be triggered. The USPTO position is that the Statute of Limitations would be triggered not by objective facts, but rather it should be allowed to decide when it should begin to run. A new and distinct exclusion action should not arise at every point that evidence of new consequences flowing from the misconduct is uncovered. The Statute of Limitations begins when the factual and legal prerequisites for an enforcement action are in place. *See 3M Co. v. Browner*, 17 F.3d 1453, 1460-63 (D.C. Cir. 1994) at 1460. There is no question that these prerequisites were in place at the time of Plaintiff's misconduct. There is no practical excuse for the USPTO not having brought this action sooner.

22

Allowing the USPTO to interpret 37 CFR §10.23(c)(5) improperly, and contrary to law, results in the above absurd and Kafkaesque result.

It is clear that the USPTO does not like being inhibited by a statute of limitations, but Congress enacted the statute precisely to inhibit agencies, including the USPTO, from delaying action until the agencies found it convenient to act. The agencies do not have the option of indefinite delay, especially when they know the relevant facts early.

The USPTO has approximately 30,000 practitioners authorized to represent applicants before the USPTO. Close to one-quarter of the practitioners are not members of the bar, and are classified as Patent Agents, as was Plaintiff before he was admitted to the bars of Maryland and D.C. in 1971. The Court should realize that one does not have to be a member of a state bar in order to practice before the USPTO.

For a while in these proceedings, the USPTO maintained that it was entitled to render reciprocal discipline (automatically excluding from USPTO practice anyone who had been disbarred by a state bar), but it appears that this position has been properly dropped, and Plaintiff thus does not find it necessary to argue against it.


A Final Word

The USPTO in the present case maintains that the operative moment for the statute of limitations is the moment of disbarment by the state of Maryland, and the grounds for exclusion have nothing to do with the underlying misconduct of Plaintiff. Plaintiff has stipulated that he was disbarred for reasons of ethical misconduct, which misconduct occurred more than five years prior to the date of initiation of this action. As with previous attorneys representing the USPTO,

Counsel chooses to devote several pages to outlining the nature of the misconduct. Since the nature of the misconduct can have nothing relevant to do with the outcome of this case, the description could only have been added to prejudice the Plaintiff in the eyes of the court. Although Plaintiff's explanation was not accepted by the Maryland court, Plaintiff has maintained from the very beginning that he sent his son to Israel, not to escape justice, but so that his grandmother, who lived there and was one of the few people who had any effective good influence over him, might have the opportunity to prevent him from committing suicide as threatened. This was not an empty threat, as seen from the fact that his son did attempt suicide soon after arriving in Israel and that his co-defendant committed suicide while in the custody of the state of Maryland. Despite the fact that the Maryland court did not believe this explanation for reasons of its own, Plaintiff still maintains (and knows) that it is true. It is for this reason that he does not hesitate to use the statute of limitations in an attempt to avoid what to him is an unjust result of his actions. But his son did not commit suicide and is alive, serving the longest jail sentence a minor has received in Israel, and if exclusion from practice before the USPTO is the price Plaintiff must pay for that, assuming that this court's decision goes against him, most parents would pay it as the price for preventing the suicide of a son.

24

CONCLUSION

Since no genuine issues of material fact are in dispute, Plaintiff prays that this Motion for

Summary Judgment should be granted and that the USPTO be ordered to reinstate Plaintiff to the

rolls of eligible patent agent practitioners.

Respectfully submitted,

Dated: September 30, 2005                    By: _____
                                             Sol Sheinbein, *pro se*
                                             c/o Castorina
                                             310 Shadow Walk
                                             Falls Church, Virginia 22046
                                             (703) 534-0673

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SOL SHEINBEIN | ) | |
| | ) | |
| | ) | |
| PLAINTIFF | ) | |
| | ) | |
| V | ) | |
| | ) | **CIVIL ACTION NO. 05-1460** |
| JON DUDAS | ) | **(ESH)** |
| Director, U.S. Patent & Trademark Office | ) | |
| | ) | |
| | ) | |
| DEFENDANT | ) | |

## ORDER

Plaintiff's Motion for Summary Judgment on the grounds that Plaintiff's exclusion was improper since the Complaint brought against Plaintiff was outside the Statute of Limitations period is granted, and the agency decision to exclude him is hereby reversed and vacated.

ORDERED, that Defendant reinstate Plaintiff, retroactively as of the date of his exclusion, to the rolls as a patent agent eligible to practice before the U.S. Patent and Trademark Office, and publish this decision and Order in the Official Gazette of the U.S. Patent and Trademark Office.

Date: _____          _____

                                 JUDGE

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SOL SHEINBEIN                          )
                                       )
                                       )
            PLAINTIFF                   )
                                       )
            V                          )
                                       )     **CIVIL ACTION NO. 05-1460**
JON DUDAS                              )          **(ESH)**
Director, U.S. Patent & Trademark Office    )
                                       )
                                       )
            DEFENDANT                   )


**U.S. District Court for the District of Columbia**
**333 Constitution Avenue NW**
**Washington, DC 20001**


### CERIFICATE OF SERVICE


I, Sol Sheinbein, certify that a copy of the attached

(1)Motion for Summary Judgment and Brief in Support for Motion for Summary, and

(2)Response to Respondent's Motion for Judgment of Affirmance

were sent by certified, first-class, return receipt requested mail on October 1, 2005, to:

U.S. District Court for the District of Columbia
333 Constitution Avenue NW
Washington, DC 20001

Heather Phillips, Esq.
Kenneth L. wainstein, Esq.
R. Craig Lawrence, Esq.
U.S. Attorney for the District of Columbia
555 4th Street, N.W.
Washington, DC 20001.

U.S. Attorney General
950 Pennsylvania Avenue, NW,
Washington, DC 20530

Michael Briskin, Esq.
Jon Dudas
P. O. Box 15667
Arlington, Virginia 22215


Dated: October 1, 2005                    By: _____

Sol Sheinbein, *pro se*
c/o Castorina
310 Shadow Walk
Falls Church, Virginia 22046
(703) 534-0673