UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOL SHEINBEIN, ) | |
| ) | |
| Petitioner, ) | |
| v. ) | Civil Action No. 05-cv01460 (ESH) |
| JON W. DUDAS, ) | |
| DIRECTOR, UNITED STATES PATENT ) | |
| AND TRADEMARK OFFICE, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

**RESPONDENT'S OPPOSITION TO PETITIONER'S
MOTION FOR SUMMARY JUDGMENT AND
REPLY TO PETITIONER'S OPPOSITION TO
RESPONDENT'S MOTION FOR SUMMARY AFFIRMANCE**

**1.     The USPTO Properly Excluded Petitioner Under the Plain Language of the Governing Regulation.**

Despite Petitioner's elaborate attempts at obfuscation, this is a very simple case. It is undisputed that Petitioner was disbarred by the State of Maryland and the District of Columbia on ethical grounds. See Petitioner's Motion for Summary Judgment ("Pet's MSJ") at 2. Title 37 C.F.R. § 10.23(a), which governs patent practice by practitioners licensed by the USPTO, provides that: "[a] practitioner shall not engage in disreputable or gross misconduct." Section 10.23(b) imposes further prohibitions upon practitioners, including, inter alia, "(1) [v]iolat[ing] a Disciplinary Rule;" "(5) [e]ngag[ing] in conduct that is prejudicial to the administration of justice;" and "(6) [e]ngag[ing] in any other conduct that adversely affects a practitioner's fitness to practice before the office." Section 10.23(c) specifies that "[c]onduct which constitutes a violation of paragraphs (a) and (b) of this section *includes*, but is not limited to: . . . (5) *Suspension or disbarment from practice as an attorney or agent on ethical grounds by any duly*

1

*constituted authority of a state or the United States . . . .*" (Emphasis added).  Plaintiff was properly charged under this rule and ultimately excluded from practice before the USPTO.  AR 1849-1867.

      **2.**      **The USPTO's Regulation was Properly Interpreted**

Unable to challenge the fact of his disbarments, Petitioner grasps at the only straw available to him:  the regulation's use of the words "conduct" and "misconduct" to embrace a practitioner's disbarment by a state.  Petitioner argues that his disbarment somehow cannot count as "conduct," because it was something that happened to him, rather than something he did.  Pet. MSJ at 6-7.  However, regulations are to be construed in the same manner as statutes, by ascertaining their plain meaning.  Tesoro Hawaii Corporation v. United States, 405 F.3d 1339, 1346 (Fed. Cir. 2005).  Further, "in interpreting a statute. . . [courts] are to determine its true, natural meaning, where ascertainable, irrespective of cumbersome syntax."  United States v. Barnes, 295 F.3d 1354, 1362 (D.C. Cir. 2002).  Here, the meaning of the applicable rule simply could not be plainer.  However the term "conduct" may be defined in a dictionary, as used in the regulation it expressly "includes . . . (5) Suspension or disbarment from practice as an attorney . . ." 37 C.F.R. § 10.23(c).

Petitioner's attempts to rely upon 35 U.S.C. § 32 in support of his argument, as the statute's language permits the USPTO to exclude a practitioner who is "shown to be incompetent or disreputable, or guilty of gross misconduct, or who does not comply with [the USPTO's disciplinary rules]."  He appears to claim that in allowing for exclusion based on a state disbarment, the USPTO's regulations are inconsistent with the governing statute.  Pet's MSJ at 16-17.  Petitioner, however, cannot seriously argue that the USPTO could not, consistent with

the statute, issue a regulation – as it has done in the form of 37 C.F.R. § 10.23(c) – providing for discipline against practitioners based upon state disbarment.  Indeed, Petitioner explicitly conceded in his initial Petition to the Court that he:

> has little doubt that the USPTO could draft a valid regulation under its authority granted in 35 U.S.C. §32 which would allow exclusion from practice of a practitioner solely on the grounds that the USPTO finds the practitioner to be disreputable.

Petition at 12.  Petitioner now characterizes this prior statement as raising a "hypothetical possibility" and stating that he "is not entirely convinced that being disbarred renders a petitioner disreputable as of the moment of disbarment."  Petitioner's Response to Respondent's Motion for Summary Affirmance ("Pet's Response") at 7.  Petitioner claims, however, that "the USPTO did not draft such a regulation."  Id.

This is patently incorrect.  As discussed above, and at length in Respondent's Motion for Summary Affirmance, the USPTO's regulation by its plain terms makes practitioners subject to discipline on precisely that basis.  Petitioner's argues that the regulation cannot mean what it says because "[the] regulation which the USPTO chose to enact defined misconduct as the operative link to the 35 U.S.C. § 32 statute and placed disbarment as a subcategory of misconduct."  Pet's Response at 4; Pet's MSJ at 11.  Petitioner, however, provides no support for his argument that "misconduct" is the "operative link" to the statute, beyond the fact that the word is used in the regulation.

Petitioner would have the Court read into the choice of words used in the regulation an intent by the USPTO to implement only a portion of its full statutory authority.  However, the regulation by its terms prohibits practitioners from engaging in "disreputable or gross misconduct."  37 C.F.R. § 10.23(a).  Petitioner presumably would map these words directly to

3

the statute and argue that the USPTO intended to implement only the "gross misconduct" prong of the statute. This, however, would read the term "disreputable" entirely out of the regulation. Petitioner would no doubt point out that the statute, unlike the regulation, does not use the term "disreputable" to modify the word "misconduct." However, the regulation unmistakably uses the terms "conduct" and "misconduct" to encompass disbarment, and is directed explicitly at, inter alia, "disreputable misconduct." Given that, it is hardly a stretch to conclude that the USPTO intended to reach disbarred practitioners under the "shown to be disreputable" prong of the statute. The alternative conclusion, that the USPTO intended to implement only a portion of its statutory authority, is simply without support in the record, as well as being contrary to the USPTO's interpretation of its own regulation, to which this court must give deference. Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984).

      Indeed as Petitioner points out, the regulatory history of 37 C.F.R. § 10.23(a) itself establishes that the regulation was intended to implement the "shown to be disreputable" prong of the governing statute. See Pet's MSJ at 9. Petitioner argues that in doing so, the USPTO limited this implementation to conduct of the type discussed in Poole v. United States, No. 84-0300, 1984 WL 742 (D. D.C. 1984). As addressed at page 19 of Respondent's Motion for Summary Affirmance ("Respondent's Motion"), however, the reference to Poole in the regulatory history suggests, at most, that a showing of disreputability can be based on specific conduct as well as a general loss of reputation. As also explained, whatever relevance the preamble language may have to situations not covered by the non-exclusive list at § 10.23(c), it can hardly be considered to read out circumstances expressly covered – such as disbarment by a state – by that list. Id. Petitioner is reduced to arguing that § 10.23(a) implements the "shown to

4

be disreputable" prong of the statute, but that § 10.23(c), which expressly defines disbarment by a state as a violation of § 10.23(a), somehow does not.  This interpretation – which flies in the face of the express language of the regulation – cannot be correct.

> **3.**     **Regardless of Whether Petitioner's Underlying Conduct Also Violated the USPTO's Regulations, Each Disbarment Started a New Statute of Limitations Clock.**

Petitioner argues that tying discipline to a practitioner's disbarment is improper because instances upon which the USPTO might exclude a practitioner from practice could conceivably accrue not only at the time of the underlying conduct, but also at one or more subsequent times when a practitioner is disbarred by a state on the basis of the same conduct.  Pet's MSJ at 10 and 22.  Petitioner provides no support for why the existence of one or more triggering events would be improper.  As explained in Respondent's Motion, the Court of Appeals for the District of Columbia has held that a cause of action accrues for purposes of the statute of limitations found in 28 U.S.C. § 2462 when the elements of the offense are satisfied, and that, where the effect of an act is an element, "[t]he same misconduct can produce different effects at different times, resulting in separate . . . claims and separate accruals."  Proffitt v. FDIC, 200 F.3d 855, 863 (2000); Respondent's Motion at 13-16.  Petitioner attempts to distinguish Proffitt on the grounds that the case considered an offense accruing under a statute, not under a regulation.  While Proffitt did indeed analyze the applicability of the statute of limitations to an offense whose elements were defined by statute, nothing in the decision or the language of § 2462 suggests that the statute of limitations would apply differently with respect to offenses, such as that here, whose elements are defined by regulation.

5

Indeed, Petitioner does not challenge the USPTO's authority to implement 35 U.S.C. § 32 by regulation. To the extent he asserts that § 2462 must be applied solely to 35 U.S.C. § 32, rather than to the 37 C.F.R. § 10.23, he proposes a scheme that, in addition to having no foundation whatsoever in the statutory language of § 2462, would be entirely unworkable. Under Petitioner's scheme, each disciplinary proceeding would involve two separate determinations. First, the ALJ, and ultimately the USPTO Director, would be required to decide whether a practitioner had satisfied the elements of an offense established under the USPTO's regulations. Second, the ALJ and Director would have to reach a separate determination, without reference to the USPTO's implementing regulations, as to when a claim had first accrued under 35 U.S.C. § 32. Not all conduct arguably prohibited by the statute is prohibited by the regulations, and not all conduct prohibited by reasonably drafted and interpreted regulations would be clearly prohibited by the statute on its face. Thus, the statute of limitations might be triggered before or after all the elements of a claim under the regulations existed. Such a scheme would not tie the limitations period to the "date when the claim first accrued," see 28 U.S.C. 2462, and would be a recipe for confusion and uncertainty.

  **4.**  **Contrary to Petitioner's Assertions, the USPTO Has Never Adopted a Different Interpretation of the Regulation at Issue.**

Petitioner argues that the USPTO's interpretation of 37 C.F.R. § 10.23 in his case is inconsistent with the interpretation adopted by an ALJ in entering default judgments in In the Matter of Ralph L. Marzocco No. D00-04 (A.R. 66-69) and Bovard v. Barron, Proceeding No. D99-02 (A.R. 70-77). Pet's Response at 5. This is incorrect. At the outset, it is worth pointing out the obvious – that these default decisions were rendered by an ALJ. Under the USPTO's regulations, an ALJ's initial decision becomes final if neither the OED Director (who is the

Complainant below) nor the Practitioner appeals to the USPTO Director. 37 C.F.R. § 10.145(a). Absent such an appeal (and none was taken in the two cited cases), the USPTO Director never reviews the ALJ decision. The USPTO Director cannot be not bound by ALJ decisions (in this case decisions by an ALJ attached to the Environmental Protection Agency, A.R. 69 and 77) he has not adopted.

In any event, Petitioner entirely mischaracterizes the holdings in the two decisions. Importantly, neither decision involved charges arising solely under 37 C.F.R. § 10.23(c)(5). The practitioner in In re Mazorocco was also charged with failing to report a disbarment and with failing to cooperate in an investigation. A.R. 67. Bovard v. Barron involved both of these charges plus a count of mishandling patent applications. A.R. 71. Significantly, in both cases the practitioners were found to have violated the USPTO's rules and were in fact suspended from practice. A.R. 68-69; 76-77. Indeed, the USPTO's statute provides for a practitioner to be "suspended or excluded" only upon "being shown to incompetent, disreputable, or guilty of gross misconduct." 35 U.S.C. § 32. In both cases, the ALJ decided that the relevant practitioner's default before him had prevented "a record being developed respecting all circumstances surrounding the professional misconduct." A.R. 68, 76. In each case the ALJ imposed an "indeterminate suspension," and observed that the practitioner "may show cause as to why he failed to respond and may provide some explanation for the misconduct set forth and found herein." Id.

The OED Director bears the burden of proof in disciplinary proceedings. 37 C.F.R. § 10.149. If the ALJ had determined that the practitioner's failure to appear had somehow prevented the OED Director from meeting that burden, he or she would have been required to

dismiss the complaint.  37 C.F.R. § 10.154(a)(2).  Instead, the ALJ made unqualified findings of disciplinary violations, but declined to make a final determination as to penalty.  It is clear that the holdings in these cases say nothing about the elements of an offense under 37 C.F.R. § 10.23(c)(5).  Instead, they simply represent an ALJ's decision – given the practitioners' default in the two cases – not to make a final recommendation on penalty without a fully developed record upon which to consider factors set forth at 37 C.F.R. 10.154(b) for that purpose, and in particular any extenuating circumstances.  See 37 C.F.R. § 10.154(b)(5).  Indeed, except for the default, the two decisions closely parallel the proceedings in the instant case, with a summary judgment on guilt followed by the opportunity for a hearing on penalty.  AR 1776.

   **5.** **A Disbarred Attorney Registered as a Patent Agent Could Potentially Continue to Practice Law in a State, Thereby Undermining the Effect of State Disbarments.**

Petitioner argues that a disbarred attorney who remains registered with the USPTO as a patent agent cannot "practice law," and therefore Respondent has wrongly argued that absent suspension or exclusion by the USPTO, a USPTO practitioner can continue to practice law in the very state that has disbarred him.  Pet's Response at 8.  Petitioner is wrong.  Petitioner may be correct in the hypertechnical sense that a state is precluded by the USPTO's statute and regulations from enforcing its unauthorized practice of law statute against a registered patent agent practicing before the office.  It is nonetheless clear that a patent agent engages in conduct that would otherwise be considered the practice of law.  In Sperry v. Florida ex. rel. Florida Bar, 373 U.S. 379 (1963), the state of Florida brought action against a registered non-attorney patent agent for unauthorized practice of law, and successfully enjoined him from:

   1. using the term 'patent attorney' or holding himself out to be an attorney at law in this state in any field or phase of the law (we recognize that the respondent according to the record before us has already voluntarily ceased the use of the word 'attorney');

   2. rendering legal opinions, including opinions as to patentability or infringement on patent rights;

   3. preparing, drafting and construing legal documents;

   4. holding himself out, in this state, as qualified to prepare and prosecute applications for letters patent, and amendments thereto;

   5. preparation and prosecution of applications for letters patent, and amendments thereto, in this state; and

   6. otherwise engaging in the practice of law.

Id. at 382.  The Court held that it did not question that "under Florida law the preparation and prosecution of patent applications for others constitutes the practice of law." Id. at 383.  The Court further observed that it did not "doubt that Florida has a substantial interest in regulating the practice of law within the State and that, in the absence of federal legislation, it could validly prohibit nonlawyers from engaging in this circumscribed form of patent practice." Id.  The Court nonetheless vacated the state injunction on the grounds that it was preempted by the Federal patent statutes.  Id. at 404.  The USPTO's concern that disbarred attorney can use their USPTO registration to, in effect, continue the practice of law is therefore indeed real.  See Respondent's Motion at 24-25.

  **6.**  **Petitioner Has Made no Equal Protection Argument Before this Court**

  Petitioner argues in his Response that Respondent has "admitted" that the USPTO regulation is "discriminatory" because it could subject a patent attorney to discipline for conduct – state disbarment – that would not subject a patent agent to discipline.  Pet's Response at 9.  While Petitioner arguably made an Equal Protection argument before the USPTO, which was appropriately disposed of in the USPTO's final decision, A.R. 1862, he has not explained before

this Court whether or why he believes that such an allegedly "discriminatory" regulation is wrong. Out of an abundance of caution, it should be pointed out that for the reasons set forth in the USPTO's Final Decision at A.R. 1862, and in pages 23 to 25 of Respondent's Motion, the USPTO has a rational basis for disciplining patent attorneys who have violated state bar rules, even if patent agents who engaged in the same underlying conduct might not be disciplined. Petitioner's suggestion that the USPTO would be required to ignore such violations of state bar rules is as nonsensical as a suggestion that the USPTO would be required to ignore a conviction for unauthorized practice of (non-patent) law entered against a patent agent because a licensed attorney could not have been convicted of the same offense.

## CONCLUSION

For the foregoing reasons, Respondent's Motion for Summary Affirmance should granted and Petitioner's Motion for Summary Judgment denied.

        Respectfully submitted,

        /s/_____
        KENNETH L. WAINSTEIN, D.C. Bar No. 451058
        United States Attorney

        /s/_____
        R. CRAIG LAWRENCE, D.C. Bar No. 171538
        Assistant United States Attorney

        /s/_____
        Heather Phillips
        Assistant United States Attorney
        United States Attorney's Office
        Civil Division
        555 4th Street, N.W.
        Washington, D.C. 20530
        (202) 514-7139

CERTIFICATE OF SERVICE


      I HEREBY CERTIFY that a copy of the foregoing **RESPONDENT'S OPPOSITION TO PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND REPLY TO PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION FOR SUMMARY AFFIRMANCE** was mailed by first class mail, postage prepaid, to pro se petitioner Sol Sheinbein, c/o Castorina, 310 Shadow Walk, Falls Church, Virginia 22046, this 7th day of October, 2005.

                                              /s/
                                    HEATHER R. PHILLIPS
                                    Assistant United States Attorney
                                    Judiciary Center Building
                                    555 4th Street, NW, Rm. E4212
                                    Washington, D.C. 20001
                                    (202) 514-7139