## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**SOL SHEINBEIN,**                  )
                                    )
              **Plaintiff,**        )
                                    )
      **v.**                        )      **Civil No.  05-1460 (ESH)**
                                    )
**JON DUDAS, Director, U.S. Patent &** )
**Trademark Office**                )
                                    )
              **Defendant.**        )
_____)

### MEMORANDUM OPINION AND ORDER

Before the Court are the parties' cross-motions regarding the U.S. Patent and Trademark Office's ("USPTO") May 5, 2005 decision by its Director excluding Sol Sheinbein from practicing law before the USPTO.  Petitioner contends this exclusion was improper since the USPTO failed to bring its complaint within the five-year statute of limitations period set forth in 28 U.S.C. § 2462.  Because the plain and unambiguous language of the USPTO regulation subjects petitioner to discipline based on his disbarment from the practice of law in Maryland and D.C., and since the statute of limitations was triggered by these disbarments, as opposed to petitioner's underlying misconduct, petitioner's request for summary judgment is denied.

### BACKGROUND

The facts material to the case are undisputed.  In August 2001, the Attorney Grievance Commission of Maryland began disciplinary proceedings against petitioner, a member of the District of Columbia and Maryland Bars and a registered attorney with the USPTO, for sending

-1-

his son, Samuel Sheinbein, to Israel on September 21, 1997, after learning that his son had killed

Alfred Enrique Tello, Jr. and that his son was being investigated in connection with the murder.

(A.R. at 1850.)  The Maryland Court of Appeals determined petitioner had committed the

criminal act of obstructing or hindering a police officer, thereby violating Rule 8.4(b) of the

Maryland Rules of Professional Conduct (MRPC).  (*Id.* at 1853.)  Additionally, the court

concluded petitioner had violated MRPC 8.4(d) by engaging in conduct prejudicial to the

administration of justice.  Based on these findings, petitioner was disbarred from practicing law

in Maryland on December 16, 2002.  (*Id.* at 1854.)  *See also Attorney Grievance Comm'n of*

*Maryland v. Sheinbein*, 812 A.2d 981 (Md. App. 2002).

Following his disbarment in Maryland, the Court of Appeals for the District of Columbia

also suspended petitioner from practicing law in the District of Columbia on February 6, 2003

under the reciprocal discipline provision of the Rules Governing the Bar of the District of

Columbia.  (A.R. 1854.)  Thereafter, by order dated March 11, 2004, the D.C. Court of Appeals

disbarred petitioner from the practice of law as reciprocal discipline for his misconduct in

Maryland.  (*Id.*)

On March 4, 2004, the Director of the USPTO's Office of Enrollment and Discipline

("OED Director") filed a complaint, pursuant to 37 C.F.R. § 10.134, seeking to exclude

petitioner from practice before the USPTO.  (*Id.*)  The complaint charged petitioner with

violating 37 C.F.R. § 10.23(c)(5) based on the disbarment from the practice of law on ethical

grounds by a duly constituted authority in the State of Maryland.  (*Id.*)  The OED Director issued

an amended complaint on March 31, 2004, charging petitioner with a second violation of 37

C.F.R. § 10.23(c)(5) as a result of his disbarment from the practice of law on ethical grounds in the District of Columbia. (*Id.* at 1855.)

Both the OED Director and petitioner filed motions for summary judgment with the Administrative Law Judge ("ALJ"). (*Id.*) On September 7, 2004, the ALJ issued an Order concluding the USPTO had established by clear and convincing evidence that Mr. Sheinbein had been disbarred from the practice of law on ethical grounds by duly constituted authorities in the State of Maryland and the District of Columbia. (*Id.*) The ALJ also found that 35 U.S.C. § 32 authorized the discipline of petitioner for the violation of a disciplinary rule and that § 10.23(c)(5) had been consistently used by the USPTO to discipline practitioners. (*Id.*) The ALJ further determined that the complaint had been timely filed within the five-year statute of limitations set forth in 28 U.S.C. § 2462, if indeed § 2462 actually applied to the proceeding. (*Id.* at 1855-56.) Accordingly, the ALJ held the USPTO had shown that Sheinbein engaged in conduct in violation of 37 C.F.R. §§ 10.23(a) and (b). (*Id.* at 1856.)

On December 10, 2004, the ALJ issued an Initial Decision in the matter, incorporating his September 7, 2004 Order on Cross-Motions for Summary Judgment. (*Id.*) The ALJ determined that petitioner should be excluded from practice before the USPTO for two reasons: (1) reciprocal discipline due to his disbarment in Maryland and the District of Columbia, and (2) notwithstanding the reciprocal disbarment argument, after applying the five factors provided in 37 C.F.R. § 10.154(b), disbarment was the "only appropriate sanction." (*Id*. at 1857.)

Petitioner subsequently appealed the ALJ's Initial Decision to the USPTO Director. (*Id.* at 1803.) On May 5, 2005, the USPTO General Counsel, acting on behalf of the USPTO Director, issued a Final Decision adopting the ALJ's factual findings and legal conclusions. (*Id.*

at 1849-65.)  The Final Decision further adopted the ALJ's recommended sanction of excluding

petitioner from the practice of law before the USPTO.  (*Id.* at 1863.)

On July 25, 2005, Sheinbein sought review by this Court of the Final Decision of the

USPTO Director pursuant to 35 U.S.C. § 32.

## ANALYSIS

Petitioner contends that the five-year statute of limitations provided under 28 U.S.C.

§ 2462 precludes this punishment because his disbarment from the practice of law in Maryland

and the District of Columbia cannot be deemed to be "conduct" within the meaning of the

USPTO's regulation.  (Pet. at 8.)  While Sheinbein concedes that his disbarments constitute

disbarments on ethical grounds, he claims only that his misconduct occurred on September 21,

1997, not the dates of the subsequent disbarments, and that the September 21 misconduct is the

only conduct that subjects him to disbarment under 37 C.F.R. §§ 10.23(a) and (b).  Accordingly,

he asserts that the failure of the USPTO to discipline him within the five-year period for his

misconduct on September 21, 1997, bars the USPTO from imposing any disciplinary action.

The statutory framework governing attorneys who practice before the USPTO is clear.  A

party shown "to be incompetent or disreputable, or guilty of gross misconduct, or who does not

comply with [Disciplinary Rules] established [by the USPTO]" may be excluded from practicing

before the Office.  35 U.S.C. § 32.  37 C.F.R. § 10.23(a) specifies that "[a] practioner shall not

engage in disreputable or gross misconduct."  37 C.F.R. § 10.23(b) further regulates practitioner

conduct by imposing prohibitions against "(1) [v]iolat[ing] a Disciplinary Rule;" "(5)

[e]ngag[ing] in any conduct that is prejudicial to the administration of justice;" and

"(6) [e]ngag[ing] in any other conduct that adversely reflects on the practioner's fitness to

practice before the [USPTO]."  37 C.F.R. § 10.23(c) provides that "[c]onduct which constitutes a

violation of paragraphs (a) and (b) of this section includes, but is not limited to: . . .

(5) Suspension or disbarment from practice as an attorney or agent on ethical grounds by any

duly constituted authority of a state or the United States. . . ."

       An agency's interpretation of its own regulations is entitled to substantial deference.

*Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994); *see also Fina Oil and Chem. Co.*

*v. Norton*, 332 F.3d 672, 676 (D.C. Cir. 2003).  This Court need not determine "which among

several competing interpretations best serves the regulatory purpose," but rather the agency's

interpretation must be given "controlling weight" unless the plain language of the regulation or

other indications of agency intent at the time of its promulgation compels an alternative reading.

*Thomas Jefferson Univ.*, 512 U.S. at 512; *see also Tozzi v. U.S. Dep't of Health and Human*

*Servs.*, 271 F.3d 301, 311 (D.C. Cir. 2001).  Simply put, the Court will reject the agency's

interpretation only if "it is plainly erroneous or inconsistent with the regulation."  *Bowles v.*

*Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945); *see also Sec'y of Labor v. Ohio Valley*

*Coal Co.*, 359 F.3d 531, 534-35 (D.C. Cir. 2004).

       The plain and unambiguous language of 37 C.F.R. § 10.23, however, makes such

deference unnecessary in this case.  *See Rucker v. Wabash R.R. Co.*, 418 F.2d 146, 149-50 (7th

Cir. 1969) (holding that when construing administrative rules "courts look first to the plain

language of the statute or rule and the legislative purpose behind its enactment.  Where statutory

language and objective appear with reasonable clarity, they are not to be overcome by resort to

mechanical rules of construction . . . .").  Petitioner was charged with violating 37 C.F.R.

§ 10.23(c)(5), which specifies that "[s]uspension or disbarment from practice as an attorney or

agent on ethical grounds by any duly constituted authority of a State or the United States . . ."

constitutes a violation of 37 C.F.R.§§ 10.23(a) and (b).  Petitioner concedes that he was disbarred

from the practice of law on ethical grounds from the State of Maryland and the District of

Columbia.  (Pl.'s Summ. J. Mot. at 2.)  Therefore, it is clear that Sheinbein not only violated 37

C.F.R. § 10.23(c)(5), and thereby violated 37 C.F.R. §§ 10.23(a) and (b) by being disbarred, but

he also violated 35 U.S.C. § 32 by failing to comply with Disciplinary Rules established by the

USPTO.  *See* 35 U.S.C. § 32 (2002); *see also* 37 C.F.R. § 10.20 (specifying § 10.23 as a

Disciplinary Rule).

      In response, petitioner argues that the five-year statute of limitations imposed by 28

U.S.C. § 2462 precludes his exclusion from practice before the USPTO.  28 U.S.C. § 2462

requires a complaint be brought "within five years from the date when the claim first

accrued. . . ."  However, petitioner's argument relies on a misinterpretation of the holding in *3M*

*Co. v. Browner*, in which the Court explained that "[a] claim normally accrues when the factual

and legal prerequisites for filing suit are in place."  17 F.3d 1453, 1460 (D.C. Cir. 1994).

Petitioner asserts that these prerequisites were in place following his misconduct on September

21, 1997, but this argument fails because petitioner could not be charged with violating 37 C.F.R.

§ 10.23(c)(5) until his actual disbarment.  Until the State of Maryland and the District of

Columbia disbarred him in 2002 and 2004, the legal prerequisites had not yet been satisfied.

When the underlying conduct satisfies multiple prongs of the Disciplinary Rules as it does here,

"[s]eparate accrual for each alternative effect gives meaning to all of the statutory language."

*Proffitt v. FDIC*, 200 F.3d 855, 864 (D.C. Cir. 2000) (holding misconduct violating statute

authorizing the removal of bank officers may have different effects at different times and therefore results in separate claims and separate accruals for each prong).

Petitioner also argues that the USPTO's interpretation of 37 C.F.R. § 10.23 has been inconsistently applied and is therefore not subject to deference. In support, he cites *In re Matter of Ralph L. Marzocco*, Proceeding No. D00-04, and *Bovard v. Barron*, Proceeding No. D99-02, as proof that the USPTO normally looks at the conduct that led to the disbarment (and not the disbarment date) as the operative date for statute of limitations purposes. (Pl.'s Summ. J. Mot. at 17.) However, neither *Marzocco* nor *Bovard* supports this interpretation. Though the ALJ issued an indeterminate suspension in both cases due to an insufficient record regarding the circumstances surrounding the misconduct as a result of defendants' failure to respond to charges, neither case involved charges arising solely under 37 C.F.R. § 10.23(c)(5), as is the case here. In fact, the ALJ in *Bovard* concluded that "[i]n view of being disbarred from the practice of law by the State of Florida, Respondent has engaged in professional misconduct in violation of 37 C.F.R. § 10.23(c)(5)." (A.R. at 72.) In no way does this case reflect an inconsistency on the part of the USPTO, but rather leniency on the part of the ALJ to allow unresponsive defendants to argue their side despite the entry of a default judgment.

Finally, petitioner persists in his misinterpretation of 37 C.F.R. § 10.23(c)(5) by attempting to read in the words "conduct that results in" so as to shift the focus to the underlying conduct which resulted in the suspension or disbarment (which occurred on September 21, 1997) from the conduct defined in 37 C.F.R. 10.23(c)(5) -- petitioner's disbarment on ethical grounds from Maryland and D.C. By its explicit terms, it is a violation of 37 C.F.R. §§ 10.23(a) and (b) to violate 37 C.F.R. § 10.23(c)(5). Therefore, there is *no* basis for the Court to limit, as argued

by petitioner, the "conduct" in the regulation to the underlying misconduct that resulted in the state bar disciplinary action when the regulation clearly encompasses other "conduct" or triggering events as grounds for the USPTO's disciplinary action.

## CONCLUSION

For the aforementioned reasons, petitioner's motion for summary judgment is **DENIED** on the grounds that the clear and unambiguous language of the USPTO regulations support petitioner's exclusion from practice before the USPTO, and, therefore, defendant's Motion for Judgment of Affirmance is **GRANTED** and the above-captioned matter is **DISMISSED WITH PREJUDICE**.

_____s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date:    October 25, 2005